## INTERNATIONAL INDEMNITY CO. v. LEHMAN et al.*

Circuit Court of Appeals, Seventh Circuit.
April 3, 1928.

Rehearing Denied October 2, 1928.

No. 3920.

Robert Golding, of Chicago, Ill., for plaintiff in error.

H. A. Sawyer and David A. Sondel, both of Milwaukee, Wis., for defendants in error.

Before EVANS, PAGE, and ANDERSON, Circuit Judges.

EVAN A. EVANS, Circuit Judge. The parties will be described as they appeared in the District Court.

Plaintiff sued to recover upon a contract of guaranty executed by the defendants.

*Certiorari denied by Supreme Court 49 S. Ct. 83, 73 L. Ed. —.

2

Defendants interposed an answer and also filed a counterclaim, wherein they sought damages for fraud alleged to have been practiced upon them by plaintiff and one S. Upon the trial, the court directed a verdict in defendants' favor as to plaintiff's cause of action and submitted to the jury the issues presented by the counterclaim. The jury rendered a verdict in favor of defendants for $35,000, and judgment followed the verdict. The only errors here assigned deal with the rulings of the court respecting the issues presented by the counterclaim. Plaintiff does not question the correctness of the ruling which directed a verdict in defendants' favor on plaintiff's cause of action.

Plaintiff assails the rulings on the admission of evidence and on its motion for a directed verdict as to defendants' counterclaim.

The controversy arose out of a California real estate deal.

Defendants, residents of Wisconsin, owned a valuable tract of land in California, reasonably worth $50,000. One S., a resident of California, owned a larger area of land, but almost worthless, which he offered to defendants' California representative, Smith, in trade for defendants' land. Smith made an examination of the land, being shown by S. Instead of showing his land, S. showed another tract reasonably worth $50,000. S. also referred Smith to plaintiff, saying that he had recently borrowed $10,000 on the land, and that plaintiff had made a careful and conservative appraisal before making the loan. Upon inquiry, plaintiff promptly showed Smith its appraisal; the tract being appraised at $50,000.

The trade was thereupon made, each tract being conveyed subject to a $10,000 mortgage. Defendants subsequently guaranteed the S. note and mortgage. Plaintiff subsequently foreclosed its mortgage upon the S. tract and realized about $6,000. It was to enforce defendants' liability for the balance of the $10,000 that the present action was instituted. Defendants not only disputed liability on the guaranty, but through their counterclaim charged plaintiff with being in a successful conspiracy with S. to defraud them to their great damage.

■ There was ample testimony showing that S. defrauded defendants. He showed the wrong land. He represented that his property had been conservatively appraised by an insurance company for loan purposes at $50,000. It was not worth a sum equal to the mortgage that stood against it.

With almost equal clarity it appears that the officers of plaintiff participated in the fraud. The size of the loan, the circumstances under which it was made, the making of a false and fraudulent land appraisal, and its use to help S. make his sale, all point to this conclusion.

Plaintiff's guilty participation in the fraud is also established by still more damaging evidence. It appears that S. wanted to borrow $5,000 upon his property. Plaintiff loaned him $10,000, but required him to take $5,000 of it in stock in plaintiff's company. The officers took a 20 per cent. commission for the sale of the stock. To cover their cupidity they caused an appraisal to be made of $50,000. From this testimony the conclusion that a prima facie case of conspiracy had been established, was unavoidable.

It was at this point that defendants offered the testimony of Smith respecting an admission made to him by S. Smith attributed to S. this language: "He said Mr. Blackstock [the president of plaintiff company] was a friend of his and he wanted them to put on a big appraisement of it [the land], so that he could dispose of it and he said that was what they did."

This testimony was cumulative. It tended to confirm the conclusion which the other testimony established.

Plaintiff, however, objected to its reception, and now insists that prejudicial error was committed in receiving it. Plaintiff's objection may be thus stated:

(a) The evidence, aside from this statement, failed to disclose a conspiracy to which plaintiff was a party, and until such conspiracy is thus shown the act or statement of one conspirator is not admissible against other alleged conspirators.

(b) If the court does not accept position (a), then it is contended that the conspiracy was ended when the statement objected to was made.

(c) The statement was inadmissible under any circumstances, because it was not in furtherance of the conspiracy which is charged.

(a) In view of what has heretofore been said, it is unnecessary to review the evidence to show why we reject the first ground of the objection. The evidence aside from this statement made out a prima facie case of conspiracy, to which plaintiff was a party.

■ (b) No needful purpose would be served in reciting the testimony which showed, or tended to show, that the conspiracy was not at an end when this statement was made. It may be true that the fraud had been completed, also that defendants had learned of

it. But the fraud and the conspiracy to defraud were different enterprises. The fraud may have been past history, but the conspiracy to defraud still be in esse. The conspiracy doubtless contemplated the fraud. But it contemplated something more. It contemplated a fraudulent sale by S. and the collection of the $10,000 note by plaintiff from the party defrauded. The collection of this money was necessarily subsequent to the fraudulent sale. For the assumption of the debt by a responsible party could only follow a sale of the land to said party. When the aforesaid statement was made, the conspirators were still pursuing the object of the conspiracy, to wit, the collection of the $10,000 from the responsible party. This being so, we cannot say as a matter of law that the conspiracy terminated prior to the death of S.

■ (c) We might terminate the discussion relative to the admissibility of this evidence and uphold the ruling upon the authority of American Fur Co. v. U. S., 2 Pet. 358, 7 L. Ed. 450; Nudd v. Burrows, 91 U. S. 426, 438, 23 L. Ed. 286; Wiborg v. U. S., 163 U. S. 632, 16 S. Ct. 1127, 41 L. Ed. 289; Delaney v. U. S., 263 U. S. 590, 44 S. Ct. 206, 68 L. Ed. 462. But there are so many decisions that have limited the admissible acts or statements of a co-conspirator to such as are done "in furtherance of the conspiracy," or "in furtherance of the common design," or "in furtherance of the common object," or "in furtherance of the common purpose," as to justify a consideration of the meaning of these expressions.

Some courts have held the declarations of one conspirator admissible when they "formed part of the res gestæ," while still others have admitted such declarations when made "during the progress, and in the prosecution of, the joint undertaking, or accompanying and explaining acts done in furtherance thereof." Jones, Comm. on Evidence, § 943.

In Connecticut Mutual Life Insurance Co. v. Hillmon, 188 U. S. 208, 215, 23 S. Ct. 294, 47 L. Ed. 446, the court was considering the admissibility of the evidence of a co-conspirator. Suit was upon an insurance policy. Defendant denied the death of the insured and charged various individuals with conspiring to defraud it out of a large sum of money by reporting his death when they knew he was alive. The trial court refused to receive the testimony of certain witnesses who would have testified as to conversations had with certain of the conspirators other than Hillmon, the insured.

One witness, Crew, would have testified that he was acquainted with Baldwin, and had several notes for collection against him, two of which were secured by a mortgage upon which he was contemplating foreclosure. Baldwin told him that a part of the money represented by his indebtedness had been furnished to insure the life of Hillmon, and that he had arranged for a portion of the insurance on the life of Hillmon, and that as soon as he could get it he would be able to straighten up all his affairs. The witness Carr would have testified that he and Baldwin had been out buying live stock, and that Baldwin stated "he was under 'brogue' with John W. Hillmon, and he said that he and Hillmon had a scheme under 'brogue,' and he said that if it worked out all right he was all right." In a literal sense, it could hardly be said that this testimony was in furtherance of the conspiracy. The court, however, held that such testimony should have been received. It said:

"These questions and declarations of Baldwin to the four witnesses above stated were made either just before or just after the policy was taken out. They were not so much narratives of what had taken place as of the purpose Baldwin had in view, and we know of no substantial reason why they do not fall within the general rule, stated by Greenleaf (1 Greenleaf on Ev. § 111), that every act and declaration of each member of the conspiracy, in pursuance of the original concerted plan, and with reference to the common object, is, in contemplation of law, the act and declaration of them all, and is therefore original evidence against each of them. The conspiracy then existed and was still pending."

In the late case of Delaney v. U. S., 263 U. S. 586, 590, 44 S. Ct. 206, 207 (68 L. Ed. 462), the court discusses the same subject.

"The only exception, however, was to testimony given by one of the conspirators of what another one of the conspirators (the latter being dead) had told him, during the progress of the conspiracy. We think the testimony was competent and within the ruling of the cases [citing cases]. And it has been said that the extent to which evidence of that kind is admissible is much in the discretion of the trial judge. * * * We do not think that the discretion was abused in the present case."

We have examined the testimony in the Delaney Case to ascertain what the witness said to which objection was made. It appears that a co-conspirator stated: "He told me that we could sell whisky, that it was all right, that Mr. G. had talked with Mr. D.

(the prohibition director, defendant herein) and that we could go ahead and sell this whisky."

In Wiborg v. U. S., 163. U. S. 632, 657, 658, 16 S. Ct. 1127, 1137 (41 L. Ed. 289), the court said, speaking of the charge of the court to the jury which was as follows:

"If these men were in combination to do an unlawful act, what was said by any of them at the time in carrying out their purpose was evidence against them all as to the nature of the explanation."

Commenting upon this charge, the court said:

"The declarations must be made in furtherance of the common object, or must constitute a part of the res gestæ of acts done in such furtherance. Assuming a secret combination between the party and the captain * * * had been proven, then, on the question whether such combination was lawful or not, the motive and intention, declarations of those engaged in it explanatory of acts done in furtherance of its object came within * * * the discretion of the trial court, and we do not consider that that discretion was abused in this instance."

In Marron v. U. S. (C. C. A.) 8 F.(2d) 251, 257, the court says:

"It is elementary that, where there is proof of a conspiracy, the act or declaration of one of the parties thereto in reference to the common object may be given in evidence against the others."

█ The rule we deduce from these cases is that an admission of one conspirator, if made during the life of the conspiracy, is admissible against a joint conspirator, when it relevantly relates to and is "in furtherance of the conspiracy." Construing the expression "in furtherance of the conspiracy" reference is not to the *admission* as such, but rather to the *act* concerning which the admission is made; that is to say, if the act or declaration, concerning which the admission or declaration is made, be in furtherance of the conspiracy, then it may be said that the admission is in furtherance of the conspiracy.

█ There is another reason why this judgment should not be reversed because of the admission of this evidence. We think we are justified in saying the evidence objected to was not prejudicial. Prior to the propounding of the objectionable question, the witness Smith had testified to the existence of the facts heretofore stated. In other words, it was shown that S. showed defendants' representative the wrong land, that the land actually conveyed was worth but a small fraction of the land shown, that a fraudulent appraisal had been made by plaintiff, and that plaintiff had made an excessive loan to S., only a part of the proceeds of which passed to S.

Referring to the fraudulent and over appraisal of the land by plaintiff, Smith says he asked S., "What did they do that for?" It was to this question that objection was made and answer given. The witness stated, "He said Mr. Blackstock was a friend of his, and he wanted them to put on a big appraisal on it, so that he could dispose of it, and he said that was what they did. I told him that was not the way respectable people generally did business."

The answer was harmless, because it stated the obvious. No other deduction could have been made by court or jury than that which the witness attributed to S.

Convinced as we are that the evidence, aside from this testimony objected to, presented a jury question respecting the existence of the conspiracy, and that the conspiracy was in existence at the time the statements were made, we conclude the court properly admitted this evidence.

The judgment is affirmed.

PAGE, Circuit Judge (concurring). The authorities cited do not support the court's rulings on the Smith testimony as to the S. admissions. But, on the whole case, I deem the error in admitting it harmless.