**UNITED STATES of America,**
**Appellee,**

v.

**Alfred SARNO, Defendant-Appellant.**

**No. 71–1226.**

United States Court of Appeals,
First Circuit.

Heard Jan. 4, 1972.

Decided March 6, 1972.

---

876

Fred Warren Bennett, Washington, D.
C., with whom Paul William Kaufman,

Marshfield, was on brief, for defendant-appellant.

Robert B. Patterson, Atty., Dept. of Justice, with whom Roger A. Pauly, Atty., Dept. of Justice, James N. Gabriel, U. S. Atty., and Albert Cullen, Sp. Atty., Dept. of Justice, were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

The defendant was convicted on both counts of an indictment charging conspiracy to import narcotic drugs (herein the conspiracy count) and inducing and procuring another to import narcotic drugs (herein the substantive count).[1] He appeals, relying principally on allegations of plain error.

At trial the defendant's three indicted co-conspirators, D'Ambrosio, Taft, and Ciardi, all testified for the government. D'Ambrosio testified that he, Taft, and Ciardi conspired to smuggle drugs in October 1967 and that pursuant to that conspiracy he and Taft bought about one pound of heroin in Tijuana, Mexico, which they smuggled into the United States. When they encountered difficulty marketing this batch, Ciardi approached the defendant in an effort to find a new buyer. The defendant wanted to see what kind of people he would be dealing with so a meeting was arranged, and in mid-February 1968 the defendant and the three co-conspirators gathered in D'Ambrosio's automobile in Revere, Massachusetts. At this meeting the defendant agreed to purchase the remainder of the heroin which had already been brought in, and on learning that D'Ambrosio and Taft planned to return to Tijuana for more, he said he would buy all the good quality heroin they could supply. Shortly thereafter, the defendant paid about $5,000 for the first batch of heroin. The money was wired to D'Ambrosio who at the time was in Phoenix, Arizona, en route to Tijuana with Taft, who used these funds to purchase more heroin. Taft, however, was apprehended attempting to smuggle this second batch across the border. D'Ambrosio testified that when he discovered that Taft had been caught, he called Ciardi for money to hire an attorney and for expenses and was told to call back. When he did so, he learned that the defendant had returned the original heroin saying that it was no good and that he wanted his money back. D'Ambrosio returned to Boston where he and Ciardi worked out a plan to repay the defendant.

The indictment charged two overt acts in furtherance of the conspiracy: (1) the February meeting in Revere and (2) the second Mexican purchase by D'Ambrosio and Taft. The case was submitted to the jury with the instruction that they could convict on the conspiracy count if they found either overt act. Defendant correctly objects that the agreement by which he entered the conspiracy cannot also be the overt act. There was no evidence of an agreement by the defendant prior to the Revere meeting. Thus while the agreement and the meeting were not necessarily co-extensive, since much of the meeting did involve formation of the conspiracy, we are presented with the possibility that the jury could have believed that the agreement alone would satisfy the overt act requirement.[2] This possibility was lessened, however, by the court's admonition, "In law, a mere agreement, without more, is not a violation of this statute. The government must prove beyond a reasonable doubt the agreement plus the doing of some

---

1. Violations of 21 U.S.C. §§ 173, 174 and 18 U.S.C. § 2 (1970) (aiding and abetting). Sections 173 and 174 were repealed. Pub.L. 91–513, § 1101(a) (2), Oct. 27, 1970, 84 Stat. 1291. Prosecutions for violations prior to the repeal are, however, preserved by § 1103 of Pub.L. 91–513.

2. We have previously addressed ourselves to similar problems created by the inartful drafting of indictments. See, e. g., United States v. Driscoll, 449 F.2d 894 (1st Cir.), cert. denied 405 U.S. 920, 92 S.Ct. 948, 30 L.Ed.2d 790 (1972); Napolitano v. United States, 340 F.2d 313 (1st Cir. 1965).

act . . . to carry out the agreement." No objection was raised either to the submission of overt act one or to the instructions on overt acts generally. Had Rule 30, Fed.R.Crim.P. been complied with, the court could easily have resolved any ambiguity caused by the overlap of the meeting and the agreement or could have withdrawn overt act one entirely. Both the uncontroverted evidence on overt act two and the guilty verdict on the substantive count indicate that the. jury found overt acts other than the agreement. We do not imply that a finding of guilt on a substantive count will generally supply the overt act necessary to sustain a conspiracy conviction. In this case, however, the jury was instructed that to convict on the substantive count they must find "[s]ome conduct by the defendant of an affirmative character in furtherance of a common criminal design or purpose . . .." Since the substantive crime was the object of the conspiracy, the jury was in essence required to find that the defendant committed an overt act in furtherance of the scheme to smuggle drugs in order to return a guilty verdict on the substantive count. Any possible confusion on overt act one was therefore vitiated. *Cf.* United States v. Driscoll, *supra* note 2.

■ The defendant would also have us notice as erroneous the admission of various hearsay declarations made by the co-conspirators prior to his entry into the conspiracy and after its termination.[3] The evidence here established one continuous conspiracy formed originally by D'Ambrosio, Taft, and Ciardi which was subsequently joined by the defendant. He is, therefore, deemed to have adopted the prior acts and declarations of his co-conspirators, and their declarations in furtherance of the conspiracy are admissible against him under the co-conspirator exception to the hearsay rule. United States v. United States Gypsum Co., 333 U.S. 364,

393, 68 S.Ct. 525, 92 L.Ed. 746 (1948); United States v. Hickey, 360 F.2d 127, 140 (7th Cir.), cert. denied, 385 U.S. 928, 87 S.Ct. 284, 17 L.Ed.2d 210 (1966); United States v. Bletterman, 279 F.2d 320, 322 (2d Cir. 1960). Furthermore, the jury was adequately instructed not to consider against the defendant statements made prior to the existence of the conspiracy.

■ Hearsay declarations made subsequent to Taft's arrest on March 3 were of small consequence. No objection was raised to the introduction of this testimony nor was any other attempt made to exclude it. Moreover, the termination of a conspiracy generally is an issue to be determined on the facts of the individual case, and we know of no per se rule that the arrest of one conspirator automatically terminates the conspiracy. *Cf.* Fiswick v. United States, 329 U.S. 211, 67 S.Ct. 224, 91 L. Ed. 196 (1946). It may frustrate it, or cause the remaining conspirators to abandon it, but where the plot is an ongoing one which is capable of being carried out in the absence of the apprehended party, his arrest no more terminates the conspiracy than would his withdrawal, incapacitation or death. In the instant case the conspirators were capable of carrying out their scheme without Taft. Furthermore, the jury was properly instructed not to consider against the defendant statements made after the termination of the conspiracy, and there is no claim that these instructions were insufficient.

■ Next the defendant contends that his convictions on both the substantive and conspiracy counts constitute double jeopardy, relying on Pereira v. United States, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954). He argues that the two offenses are identical. We do not agree. The agreement is the essence of the conspiracy and the defendant's contribution of funds to facilitate the smuggling by Taft is the essence of the

---

3. We note that since each of the out-of-court declarants testified, any possible prejudice resulting from the admission of their hearsay statements was minimized by their availability for cross-examination.

substantive crime. Each is distinct and poses separate evidentiary requirements. *See* Pereira v. United States, *supra* at 11–12, 74 S.Ct. 358. *See also* Pinkerton v. United States, 328 U.S. 640, 643–644, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). The fact that both the conspiracy and the substantive counts were charged under the same statute, does not preclude convictions for both offenses. By including conspiracies within § 174, Congress intended to provide more severe penalties than were applicable under 18 U.S.C. § 371. It did not intend to merge drug conspiracies in the completed substantive crime or to preclude convictions for both. Furthermore, the sentences here are concurrent.[4]

Finally, the defendant generally attacks the sufficiency of the evidence and the adequacy of the instructions to the jury. We have examined these contentions and find them so totally lacking in merit that no purpose would be served by discussing them there. Suffice it to say that the evidence was ample and there was no significant error or omission in the court's instructions.

Affirmed.

4. *See generally*, Developments in the Law—Criminal Conspiracy, 72 Harv.L.Rev. 922, 965–66, 968–71 (1959).