**STATE of South Dakota, Plaintiff and Respondent,**

v.

**Ken KANE and Curtis Bald Eagle, Defendants and Appellants.**

Nos. 11910, 11911.

Supreme Court of South Dakota.

Argued Oct. 6, 1977.

Decided May 31, 1978.

Rehearing Denied July 7, 1978.

Peter H. Lieberman, Asst. Atty. Gen., Pierre, William J. Janklow, Atty. Gen., Pierre, on brief, for plaintiff and respondent.

James D. Leach, Frank D. Katz, Elisabeth L. Brodyaga, San Jose, Cal., John N. Gridley, III, Sioux Falls, for defendants and appellants.

MORGAN, Justice.

This is a consolidated appeal by Ken Kane and Curtis Bald Eagle after a jury verdict finding them guilty of riot to obstruct justice arising from an incident at the Minnehaha County Courthouse in Sioux Falls, South Dakota, on April 30, 1974. We affirm.

On April 30, 1974, at the trial of *State v. Bad Heart Bull, et al.*, a number of spectators did not stand for Judge Bottum when he entered the courtroom. This being the second time this had occurred in the course of the trial, Judge Bottum ordered all spectators cleared from the courtroom. However a group of Indian spectators refused to leave. After approximately two hours of discussion the Sioux Falls Tactical Squad entered the courtroom to remove them. At that time a struggle occurred in which a chair was thrown out a window purportedly signaling those below to begin throwing rocks and debris at the courthouse, which they did, breaking glass windows and doors across the entire front of the courthouse.

The conduct of the various persons involved in the incident and their motives for their conduct were the subject of much dispute at trial.

The state witness, Kenneth Dahl, testified that the day before the disturbance two meetings of Indian people were held. At these meetings the people were told not to stand, that the spectators needed to consist of fifteen strong warriors prepared to do battle with the tactical squad and that a signal would be given from the inside to those people on the outside when they were to bombard the courthouse with debris. The three defense witnesses contended that at these meetings no violence was planned. The reason they were not standing for Judge Bottum was to protest the court's and the judge's racist attitude, and the alleged purpose of only sending men was the fear of possible violence by the tactical squad.

A tactical squad member testified that a person who must have been appellant Cur-

tis Bald Eagle struck him from behind and then jumped on the back of another tactical squad member. Another tactical squad member testified that appellant Ken Kane "power dived" at him from the top of a railing. Appellant Curtis Bald Eagle disputed this and testified in his own defense that when he saw a tactical squad member strike Russell Means he started to Means' defense but was grabbed and pulled over the side of the bar before he could reach him.

■ Appellants contend that SDCL 22–10–4, the statute that the appellants were convicted under, is unconstitutional as an infringement on their First Amendment rights of free speech and association. Both of these provisions have been part of our riot statutes since 1887. SDCL 22–10–1 defines riot, and SDCL 22–10–4 specifies that when the purpose of the riotous assembly is to resist the execution of any statute of this state or of the United States or to obstruct any public officer of this state or of the United States in the performance of any legal duty, the prison sentence shall be a maximum of ten years and a minimum of two years. We have recently passed on the constitutionality of SDCL 22–10–1 and SDCL 22–10–5 and upheld those statutes.[1] We find our holding in that case to still be persuasive.

■ Appellants urge that in this case SDCL 22–10–4 is vague and overbroad and thereby constitutionally infirm in that the term "riotous assembly" is vague and wholly undefined. We hold that the term "riotous assembly" is merely descriptive of and refers to the three or more persons acting together, as described in SDCL 22–10–1. As we have noted, the various provisions were drawn as a package of riot statutes. Why the legislature did not merely use the word "riot" as it did in most of the other complementary statutes enacted at the time we do not know, nor need we inquire. Perhaps the statutes could be more precise, but imperfect draftsmanship does not render the statute unconstitutional:

The root of the vagueness doctrine is a rough idea of fairness. It is not a principle design to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide a fair warning that certain kinds of conduct are prohibited. *Colten v. Kentucky*, 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972).

Reading the riot statutes together the answer that we have arrived at is obvious. The case of *Bad Heart Bull* addressed the overbreadth criticism in stating:

[T]he gravamen of the crime of riot in South Dakota is violence or the immediate threat thereof. As such, it relates to and prohibits certain defined conduct rather than forms of expression. Laws of this nature are needed and necessary to preserve good order and to protect all persons and all property from the violence of a few. They do not violate the constitutional rights of free expression and assembly as those rights end when violence begins. *State v. Bad Heart Bull*, S.D., 257 N.W.2d 715, 722 (1977).

This is clearly distinguishable from the teaching and advocacy provisions of the anti-riot act discussed in *U. S. v. Dellinger*, 472 F.2d 340, 359 (7th Cir. 1973) upon which the appellants so heavily rely. *Dellinger* states:

A realistic approach compels application of a first amendment test to a statute which punishes activity *leading up to and furthering* a riot, * * * (emphasis added)

and further

* * * a riot may well erupt out of an originally peaceful demonstration which many participants intended to maintain as such. Each participant is entitled to a careful distinction between responsibility for the lawful and constitutionally protected demonstration and responsibility

---

1. *State v. Bad Heart Bull*, S.D., 257 N.W.2d 715 (1977).

for the activity for which the legislative body validly prescribes a penalty.

The *Dellinger* opinion goes on to provide that many of the anti-riot act provisions (incite, organize, promote, encourage) relate to persons causing the possibility that others will riot and makes those persons liable because of their causal rather than active role. This is clearly not contemplated under the South Dakota statutes discussed herein. Whether it would come into play in a case involving a violation of SDCL 22–10–6, encouraging or soliciting riot, is not before us.

During the direct examination of Gene Paul Kean by the state, Mr. Kean testified to a statement made to him by Vernon Bellecourt. Appellant objected that the statement was hearsay. After an offer of proof by the state, and some discussion in chambers, the trial court indicated that it would admit the testimony under the coconspirator exception to the hearsay rule. Defense counsel then objected that the statement was not admissible under that exception because it was not "in furtherance of the conspiracy."

■ The co-conspirator exception states that when there is substantial evidence of a conspiracy, whether the offense charged is a conspiracy or not, everything said by any conspirator during the existence of the conspiracy and in execution or furtherance of the common purpose is deemed to have been said in behalf of all parties to the conspiracy. A statement by a co-conspirator of a party during the course and in furtherance of the conspiracy is thus admissible against the party as an admission. This court so held in *State v. Violet,* 57 S.D. 648, 234 N.W. 623 (1931).

■ By order dated March 28, 1978, effective July 1, 1978, this court adopted verbatim the Federal Rule 801 which in pertinent part provides:

(d) A statement is not hearsay if:

\* \* \* \* \* \*

(2) The statement is offered against a party and is

\* \* \* \* \* \*

(E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

Thus, three conditions must be met for this rule to be applicable. First, there must be substantial evidence of a conspiracy; second, a declaration must have been made while a conspiracy was continuing; and third, the statement must have constituted a step in furtherance of the venture.

■ On appeal, appellants attack the court's ruling on all three grounds. First, there was no evidence to link either of the appellants to the formation of the conspiracy; second, the statement had nothing to do with furthering the conspiracy; and third, that the statement was not made during the pendency of the conspiracy. However, on the trial level, the only grounds stated to the trial court for the objection to the admission under the exception were that the statement was not in furtherance of the conspiracy. We therefore hold that this is the only question properly raised on appeal.[2]

■ Since our rule, both as stated in *Violet,* supra, and as now adopted, conforms to the federal rule, we can look to the federal decisions for guidance in determining whether the questioned testimony meets the "in furtherance" requirement.

The United States Supreme Court in *Krulewitch v. U. S.,* 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949) noted: "This prerequisite to admissibility, that hearsay statements by some conspirators to be admissible against others must be made in furtherance of the conspiracy charged, has been scrupulously observed by federal courts." The Senate Judiciary Committee specifically referred to *Krulewitch* with ap-

**2.** *Baumgartner's Electric Const. Co. v. DeVries,* 77 S.D. 273, 91 N.W.2d 663 (1958), *cert. denied* 359 U.S. 498, 79 S.Ct. 1117, 3 L.Ed.2d 976;

*Ellwein v. Town of Roscoe,* 42 S.D. 298, 174 N.W. 748 (1919).

proval when considering proposed Rule 801.[3]

Professor Weinstein[4] theorizes that the committee's retention of the "in furtherance" requirement was motivated by a desire to strike a balance between the great need for conspirators' statements in combating undesirable criminal activity which is inherently secretive and difficult of proof, and the need to protect the accused against idle chatter of criminal partners as well as inadvertently misreported and deliberately fabricated evidence.

A reading of the cases, however, raises some doubt that the federal courts have been so scrupulous in their observation of the "in furtherance" requirement. As the Seventh Circuit held in the case of *International Indemnity Company v. Lehman,* 28 F.2d 1, 4 (7th Cir. 1928): "The rule we deduce from these cases is that an admission of one conspirator, if made during the life of the conspiracy, is admissible against a joint conspirator, when it relevantly relates to and is 'in furtherance of the conspiracy.'" Construing the expression "in furtherance of the conspiracy" reference is not to the admission as such, but rather to the act concerning which the admission is made; that is to say, if the act or declaration, concerning which the admission or declaration is made, be in furtherance of the conspiracy, then it may be said that the admission is "in furtherance of the conspiracy."

The divergence of opinion was referred to by the Eighth Circuit Court of Appeals in the case of *U. S. v. Jackson, et al.,* 549 F.2d 517 (8th Cir. 1977), wherein the writer noted that the fact that the federal courts have not applied the "in furtherance" requirement uniformly reflects the long-standing divergence of opinion over the validity of this requirement. Interpretations range from its strict application citing *U. S. v. Birnbaum,* 337 F.2d 490 (2nd Cir. 1964) to

its reduction to a concept of relevancy citing *International Indemnity Co. v. Lehman,* supra.

The *Jackson* court went on to state: "The approach in this circuit has been to retain the 'in furtherance' requirement, while acknowledging a tendency on the part of commentators to construe this provision broadly [citations omitted]."

One of the cases cited by the *Jackson* court, *U. S. v. Overshon,* 494 F.2d 894 (8th Cir. 1974) noted:

> Several commentators have noted that courts have tended to broadly construe the requirement that the co-conspirator's statement be made in furtherance of the conspiracy, so long as the hearsay statement sought to be admitted was uttered during the active life of the conspiracy under circumstances indicating reliability and provided the statement related to the conspiracy itself [citations omitted].

The court then concluded that the statements uttered clearly were in furtherance of the conspiracy. Several were intended as solicitations for business and to insure good relations for future sales.

The next cases, *U. S. v. Rich* (and *U. S. v. Weber*) 518 F.2d 980 (8th Cir. 1975) cited with approval the quotation from *Overshon,* supra, but passed over the question by concluding that the statement was properly admitted into evidence as substantial independent evidence existed that the declarants were also part of the conspiracy with the defendants and whether the jury actually considered these statements against the defendant is of no consequence on appeal since the trial judge properly instructed the jury concerning the circumstances in which the statements could be considered as to the defendants.

Finally, in *U. S. v. Harris,* 546 F.2d 234 (8th Cir. 1976), also cited by the *Jackson* court, the *Harris* court cited the quotation

---

**3.** Senate Committee on Judiciary, Federal Rules of Evidence, S.Rep.No. 93–1277, 93rd Cong., 2nd Sess. 26 (1974).

**4.** 4 Weinstein on Evidence, 801—145.

from the *Overshon* case but concluded that in light of the Supreme Court's continuance to include this requirement, that the "in furtherance of" requirement remains viable in the federal courts. The opinion went on to acknowledge that whether the statement was "in furtherance of" the conspiracy was a close question but found that, assuming arguendo that it was inadmissible, the error was harmless.

The statement objected to in the *Jackson* case made by one of several defendants to his brother regarding the participation of another defendant in a narcotics operation was held by the court to be admissible as follows:

Thus, although it is a close question, we believe that James Jackson's statement to Anderson concerning Muhammed's involvement in the sale of narcotics was in furtherance of the conspiracy. Since it was clearly made in the course of the conspiracy and was 'connected up' by sufficient independent evidence of the conspiracy this statement was properly admitted under Rule 801(d)(2)(e).

Attempting to follow the guideline of these federal cases we now examine the declaration in the instant case with respect to the "in furtherance" requirement. Using a strict interpretation of the rule there appears to be no question but what the declaration would be inadmissible inasmuch as nothing was said that in and of itself would be in furtherance of the conspiracy. However, applying the broad interpretation, if we consider the expression "in furtherance of the conspiracy" to refer not to the admission as such but rather to the act concerning which the admission is made—in this case the act of the courthouse riot—then, if that act is in furtherance of the conspiracy, we may say that the admission is in furtherance of the conspiracy. In reviewing the evidence, particularly the testimony of the state's witness, Kenneth Dahl, and reviewing the evidence in a light most

favorable to support the verdict, we hold that there is ample evidence of the existence of the conspiracy to riot at the Minnehaha County Courthouse, so at least to that extent the declaration would be admissible.

We then examine the circumstances under which the statement was uttered to determine the reliability of the declarant as suggested in *U. S. v. Overshon,* supra. For if we are going to use the broad interpretation of the rule to facilitate the prosecution of conspiracies we are also going to require a showing of reliability with the protection of the accused. The declarant was Vernon Bellecourt, known to Mr. Kean, and identified by the evidence as one of the leaders of the Indian people who had gathered the night before to plan the confrontation. Clearly, the declaration was not idle chatter nor an inadvertent misreport nor a deliberately fabricated piece of evidence. See Weinstein, supra. Accordingly, we hold that the testimony of the witness was admissible as a statement of a co-conspirator.

The next error attributed to the trial court that appellant assigns is the admission into evidence of films of the scene at the front of the courthouse on the day of the riot.

It is generally understood that the trial court, in determining whether pictures or photographs should be admitted, must weigh the probative value of the photographs in resolving a material issue as against the danger of prejudice to the appellant through needless arousal of the passions of the jurors.[5] In the hearing outside the presence of the jury the trial court, who was obviously aware of the content of the films,[6] overruled the defense counsel's objections by setting out in essence the test of admissibility.

Once the trial judge weighs those two factors it is within the discretion of the trial court to admit the motion pictures. As this

---

5. *People v. Davis,* 62 Cal.2d 791, 44 Cal.Rptr. 454, 402 P.2d 142 (1965); *People v. Ford,* 60 Cal.2d 772, 36 Cal.Rptr. 620, 388 P.2d 892 (1964).

6. This was a copy of a film clip taken by a local newsman which had previously been admitted in evidence at another trial over which the same trial judge had presided.

court said in *State v. Zobel,* 81 S.D. 260, 279, 134 N.W.2d 101, 111 (1965):

[P]hotographs, slides and X-rays are admissible when they accurately portray anything which it is competent for a witness to describe in his own words, or where they are helpful as an aid to a verbal description of objects or conditions and relevant to some material issue. They are not rendered inadmissible merely because they vividly bring to jurors details of a crime or incidentally tend to arouse passion and prejudice.

On appeal, appellants contend that the film should not have been admitted because of its lack of probative value, in that the film did not show either of the appellants or anything that transpired in the courtroom where the melee at issue occurred; that all the film showed was the undisputed facts that people were throwing rocks through windows and breaking doors. Appellants maintain that a prejudicial effect arose from the fact that the film showed a violent attack upon a "Courthouse" which is a sacred symbol to many Americans, the destruction of which would arouse the passions of the jurors needlessly. These specific objections were not made to the trial court. It was merely stated that the film was incompetent, cumulative, and likely to remind the jurors of extra-judicial evidence that they viewed at the time of the occurrence and were sworn to ignore.

■ The state refutes these contentions because the film was probative of a riot in which the appellants were engaged and was admissible despite the fact that they were not portrayed in it.[7] Since the prejudicial effect is left to the discretion of the trial court, this court affirms the trial court for lack of any showing of abuse.

■ The appellants next challenge their ability to get a fair and impartial trial since the trial court failed to grant additional peremptories, because such a trial simply could not be had as evidenced by the voir dire and the pretrial evidence of Professor Schulman, a public opinion sampler.

As to the first contention, the appellants refer to a letter by the court and an order under date of October 1, 1975. However, they fail to designate where they appear in the record, and our search of the voluminous record fails to resurrect them; nor do the appellants cite any authority that such failure was reversible error. Lacking any showing that the trial judge abused his discretion by not allowing more peremptories than provided by statute, we cannot say that he erred.

Reference to the voir dire lacks any particularity as to instances that demonstrate the appellants' contention. The trial court had heard the testimony of Professor Schulman and again, since appellants failed to refer to any particular statements in the record that support their bare assertion, we cannot say that the trial court erred.

■ The balance of the assignments were matters for the jury to decide. In viewing the evidence most favorable to the verdict we are persuaded that there was substantial evidence to support the verdict.

DUNN, C. J., and McKEEVER, Circuit Judge, concur.

WOLLMAN and PORTER, JJ., concur specially.

McKEEVER, Circuit Judge, sitting for ZASTROW, J., disqualified.

WOLLMAN, Justice (concurring specially).

I join in the majority opinion except for that portion that holds that the statement made to Mr. Kean by Vernon Bellecourt was properly admitted under the co-conspirator exception to the hearsay rule.

The relevant portion of Mr. Kean's testimony reads as follows:

"At that time when Mr. Bellecourt was leaning on the door he stated—he said, 'You sure had a nice Courthouse here.' He said, 'But it's all your fault that it was wrecked.' He said, 'We did the same thing in Custer; we did it here.' He said,

7. *U. S. v. Farries,* 459 F.2d 1057, 1064 (3rd Cir. 1972).

'one of these days—' he said—'we'll,' or "The Indians will own this Courthouse or all of South Dakota.'"

With respect to Rule 801(d)(2)(E) of the Federal Rules of Evidence, Professor Weinstein has written that:

"The adoption of Rule 801(d)(2)(E) and the rejection of the Model Code-Uniform Rule approach should be viewed as mandating a construction of the 'in furtherance' requirement protective of defendants, particularly since the Advisory Committee was concerned lest relaxation of this standard lead to the admission of less reliable evidence. Narrative declarations should not be admitted as a matter of course and statements of confession should be carefully scrutinized. Since prejudice is likely, the harmless error rule should seldom be relied upon by the trial judge. Whether a particular statement tends to advance the objectives of the conspiracy can only be determined by examination of the context in which it is made." 4 Weinstein's Evidence 801–147 (footnotes omitted).

The broad interpretation espoused by the majority opinion seems to me to read the "in furtherance" requirement out of the rule. Accordingly, I would hold that the trial court erred in admitting the statement in question. I would also hold, however, that the admission of the statement was harmless error. The statement did not inculpate either of the defendants by name or by implication. Moreover, defendants were charged with having participated in a riotous assembly for the purpose of obstructing public officers in the performance of their legal duty, a charge on which the statement in question had little, if any, probative value. Finally, the evidence concerning defendants' participation in the attack upon the police officers in the courtroom was so substantial that the statement in question cannot be viewed as material to the proof of the state's case. See *United States v. Harris,* 8 Cir., 546 F.2d 234.

I am authorized to state that Justice Porter joins in this special concurrence.