**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Jack Charles SMITH, Defendant and Appellant.**

No. 13987.

Supreme Court of South Dakota.

Considered on Briefs Oct. 27, 1983.

Decided July 11, 1984.

Rehearing Denied Aug. 16, 1984.

Richard H. Wendt, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Gary L. Richter of Zimmer, Richter & Duncan, Parker, for defendant and appellant.

WOLLMAN, Justice.

This is an appeal from a judgment for conviction of grand theft. We affirm.

On September 8, 1980, a two-toned green 1980 Peterbilt truck with a double sleeper which was owned by Sioux City Truck Sales was stolen from the lot of Larson Truck Sales near Tea, South Dakota. Later in the fall of 1980, Claire Larson, the owner of Larson Truck Sales, received an anonymous telephone call in which the caller informed him of knowing where the stolen truck was located, who had possession of the truck, and that the cab had been changed on the truck.

In the early months of 1980, officers of the Sioux City, Iowa, police department established an undercover operation for the purpose of purchasing stolen property. The officers utilized a vacant warehouse at the Sioux City Air Base as the headquarters of this so-called sting operation. The office area of this warehouse was equipped with concealed video tape cameras that recorded the movements and the conversation of those who came to the warehouse to discuss the sale of stolen property with the undercover agents.

In late November of 1980, Robert Blakey (Blakey) of Yankton came into contact with the sting operation officers by telephoning them at the warehouse office. Blakey thereafter had a number of telephone conversations with the undercover officers, who at this time were not familiar with Blakey. During the course of these telephone conversations, Blakey inquired whether the officers would be interested in purchasing some new automobiles. A purchase price was agreed upon and arrangements were made for Blakey to bring two new automobiles to the warehouse on the

night of December 23, 1980. Blakey and Smith drove the automobiles to a tavern located in the vicinity of the warehouse, arriving at approximately 10:00 p.m. on December 23. Blakey called the officers from the tavern inasmuch as he did not know where the warehouse was located. Blakey then drove one of the two new cars to the warehouse, leaving Smith behind at the tavern. Blakey explained to the officers that he did not want his partner to come to the warehouse because he, Blakey, did not want anyone other than himself to know about the warehouse and the people he was dealing with. Accordingly, the officers gave Blakey a ride back to the tavern, where Blakey picked up the second automobile and drove it back to the warehouse. At the conclusion of the transaction, the officers gave Blakey and Smith a ride back to Yankton.

On February 9, 1981, Blakey and Smith came to the warehouse. Blakey engaged in negotiations with the officers for the sale to them of a Caterpiller front end loader, ultimately agreeing upon a $15,000 purchase price.

On February 28, 1981, Blakey came alone to the warehouse, where he sold the agents two new Case front end loaders. During the course of the conversation with the officers on this date, Blakey spoke of a "Jack" who was an airplane mechanic. Smith is an airplane mechanic. Later in the conversation Blakey told the agents that he wanted some paperwork (title) for a 1980 Peterbilt truck. Blakey related having stolen a 1980 truck with a double sleeper, painting the truck, selling the cab on it and replacing the new cab with an older one. Blakey stated that nosey people had begun to talk, which had apparently made it difficult to sell the truck. Blakey then volunteered, "Jack was with me on the deal," and explained that they then decided to keep the truck.

The trial court permitted the State to show the jury edited versions of the video tapes of the February 9 and February 28 conversations between Blakey and the officers, including that portion of the tape of February 28 on which Blakey made the statement, "Jack was with me on the deal."

During the late fall or early winter of 1980, Blakey called one Mike Hevle, who had previously worked as a truck driver for Blakey, and asked him to come to Blakey's garage in Yankton to hook up a wiring harness on a truck. Upon arriving at the garage, Hevle observed a truck chassis from which the cab had been removed. Some three weeks later, Hevle went to Blakey's home at Blakey's request to view the truck, on which a cab had since been installed. After telling Hevle that he wanted to do more work on the truck, Blakey mentioned that he had stolen the truck. Over Smith's objection, Hevle was permitted to testify in response to the State's question regarding how Blakey had stolen the truck that "He said that him and Jack Smith went in his old Chevrolet car ... And that Jack dropped him off and he left and Bobby got the truck." Hevle twice testified that after receiving this information he refused to do any more work on the truck.

In May of 1981, Larson, accompanied by law enforcement officers, examined a truck that was parked on Blakey's property in Yankton. Standing in an adjacent lot, Larson identified the vehicle, which had been repainted and on which a cab from a 1972 Peterbilt truck had been installed, as the truck that had been stolen from him. Larson subsequently made a positive identification of the truck on the basis of the serial number on the fuel pump. Larson and the officers also went to a garage that was rented by Blakey, where Larson identified parts that had been removed from the stolen truck. About one week later, Larson was called to view an old Peterbilt truck that was located on Smith's property. Larson, standing in the alley adjacent to Smith's property, identified the new wheels, mudflaps, and tires that were on the old truck as having come from the truck that had been stolen from him.

As a result of the sting operation, Blakey and Smith pleaded guilty to federal charges and were sentenced to federal prison at

Leavenworth, Kansas. In order to stand trial for the theft of the truck, Smith was returned to this state from federal prison on February 9, 1982, pursuant to a written request under the Interstate Agreement on Detainers (IAD), SDCL ch. 23–24A. His trial was held September 28–29, 1982.

Smith's first contention on appeal is that the trial court erred in denying his motion to dismiss the indictment based upon the ground that his trial was not commenced within one hundred twenty days of his arrival in the state as required by the IAD. *See* SDCL 23–24A–14; SDCL 23–24A–22.[1]

■ The purpose of the IAD is to secure the speedy trial of persons already incarcerated in other jurisdictions and to prevent the obstruction of programs of prisoner treatment and rehabilitation. SDCL 23–24A–1; *see State v. Looze,* 273 N.W.2d 177 (S.D.1979). The IAD applies only to a prisoner actually serving a term of imprisonment in another jurisdiction. *State v. Looze, supra.*

■ A detainer action letter from the federal prison dated February 5, 1982, stated that Smith had served 4 months, 8 days of a 6 month sentence at Leavenworth, and had 1 month, 20 days remaining to be served and had earned 21 days of good time. Smith waived the 30-day time limitation and agreed to be accompanied by Lincoln County, South Dakota, officials whenever they could transport him. It appears that on February 9, 1982, the date of his arrival and bond hearing in this state, Smith represented to the circuit court that he was not serving any sentence in any other jurisdiction. Since Smith had ceased being a prisoner serving a term of impris-

onment in another jurisdiction prior to one hundred twenty days after his release from Leavenworth, the IAD was not applicable to him, and the trial court did not err in refusing to dismiss the indictment.

Smith's next contention is that the admission of the extrajudicial statements made by Robert Blakey to Hevle in late 1980 and to the sting officers on February 28, 1981, constituted inadmissible hearsay and violated his constitutional right of confrontation of witnesses. U.S. Const. amend. VI; S.D. Const. art. VI, § 7.

■ With respect to the confrontation issue, although the hearsay rule and the confrontation clause are generally designed to protect similar values, the confrontation clause values may be violated by hearsay statements even though the statements fall under a recognized hearsay exception. *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). In this case, however, there are no unusual circumstances that would require us to hold that the co-conspirator exception and the confrontation clause are not co-extensive. *See United States v. Nelson,* 603 F.2d 42 (8th Cir. 1979). Furthermore, Smith did not object at trial to the use of Blakey's statements on the ground that the State had not shown that Blakey was unavailable; consequently, we will not consider that objection on appeal. *State v. Holt,* 334 N.W.2d 47 (S.D. 1983). In any event, what the court stated in *United States v. Nelson, supra,* is applicable here:

> If out-of-court declarations were only admissible when the declarant was also available for cross-examination, the value

1. SDCL 23–24A–14 provides:
   In respect of any proceeding made possible by §§ 23–24A–12 and 23–24A–13, trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.
   SDCL 23–24A–22 provides:
   If the appropriate authority shall refuse or fail to accept temporary custody of said per-

son, or in the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in § 23–24A–3 or § 23–24A–14, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.

of the rule allowing the admission of coconspirator's statements would be significantly diminished. In many, if not most, cases the coconspirator will himself be subject to criminal charges and will be unwilling to testify.

603 F.2d at 46.

Turning to the hearsay issue, the State contends that these statements are admissible pursuant to SDCL 19–16–3(5), the co-conspirator exception to the hearsay rule. SDCL 19–16–3(5), which is modeled after Fed.R.Evid. 801(d)(2)(E), provides: "A statement is not hearsay if it is offered against a party and is ... (5) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy."

■ Statements made by. a co-conspirator are admissible whether or not a conspiracy has been charged. *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *United States v. Green*, 600 F.2d 154 (8th Cir.1979); *United States v. Moss*, 544 F.2d 954 (8th Cir.1976); *State v. O'Brien*, 318 N.W.2d 108 (S.D. 1982); *State v. Giuliano*, 270 N.W.2d 33 (S.D.1978). Three conditions must exist, however, before the co-conspirator statement exception is applicable: (1) there must be substantial evidence of a conspiracy; (2) the statement must have been made while the conspiracy was continuing; and (3) the statement must have constituted a step in furtherance of the conspiracy. *State v. Kane*, 266 N.W.2d 552 (S.D.1978).

■ Apart from the hearsay statements, there was substantial evidence of a conspiracy involving Blakey and Smith. Wheels, tires, and mudflaps identified as having come from the stolen truck were found on a truck on Smith's property. Smith had accompanied Blakey to Sioux City for the purpose of selling other stolen property. We conclude, therefore, that the first condition was established by the State.

In determining whether the conspiracy was continuing, we must determine whether the central aim of the conspiracy had been achieved at the time the co-conspira-tor's statement was made. *Krulewitch v. United States*, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949). When Blakey made the statements in issue, the cab from the stolen Peterbilt truck had apparently been disposed of, but the truck chassis was subsequently found on Blakey's property and parts from the truck were subsequently found on Smith's property and on property rented by Blakey. Blakey and Smith still had a pecuniary interest in the truck and parts therefrom. Until those were disposed of, the central aim of the conspiracy had not been achieved, and the conspiracy was thus still in continuance at the time the challenged statements were made.

Had the evidence shown that the asportation of the truck was an isolated, discrete act, the accomplishment of which concluded Smith's involvement with Blakey, there would have been more force to the argument that the conspiracy ended with the arrival of the truck in Yankton. *See, e.g., United States v. Miller*, 725 F.2d 462 (8th Cir.1984); *United States v. Engleman*, 648 F.2d 473 (8th Cir.1981); *United States v. Knife*, 592 F.2d 472 (8th Cir.1979); *United States v. Yow*, 465 F.2d 1328 (8th Cir.1972). As it was, however, all of the evidence pointed to Smith's continued involvement with Blakey, not only in the theft and attempted disposition of the stolen truck, but also in the theft and sale of other vehicles and equipment. It must be remembered that Smith was being prosecuted for the theft of the 1980 Peterbilt truck and not for conspiracy. The ongoing conspiracy with Blakey, on the other hand, related not only to the truck but also to other property. Thus, the conspiracy was continuous in nature. *United States v. Sarno*, 456 F.2d 875 (1st Cir.1972).

There remains the question whether the statements were made in furtherance of the conspiracy. In *State v. Kane, supra*, we analyzed federal case law in addressing the "in furtherance of the conspiracy" requirement of the co-conspirator exception to the hearsay rule. We observed that notwithstanding the United States Supreme Court's statement that this require-

ment "has been scrupulously observed by federal courts," *Krulewitch, supra,* 336 U.S. at 444, 69 S.Ct. at 718, 93 L.Ed. at 794,[2] there exists a divergence of opinion on the validity of and a tendency to broadly construe the in furtherance requirement. We reviewed in some detail in *Kane* opinions from the Court of Appeals for the Eighth Circuit that have discussed the in furtherance requirement of the federal rule. We then applied the broad interpretation given to the in furtherance requirement of the common law rule announced by the Court of Appeals for the Seventh Circuit in *International Indemnity Co. v. Lehman,* 28 F.2d 1 (7th Cir.1928). Under that interpretation, "in furtherance of the conspiracy" refers not to the statement made by the co-conspirator but to the act with respect to which the statement was made, i.e., if the act referred to in the statement was in furtherance of the conspiracy, then the statement is held to be in furtherance of the conspiracy.

■ Upon further reflection, we conclude that we erred in adopting the holding in *Lehman* as the interpretation to be given to the "in furtherance of the conspiracy" requirement of SDCL 19–16–3(5) rather than adopting the interpretation given to the federal counterpart of our rule. The *Lehman* case, decided by a divided three-judge court, involved a civil antitrust action brought many years before the adoption of the Federal Rules of Evidence. The Court of Appeals for the Seventh Circuit apparently applies the same interpretation to the "in furtherance of the conspiracy" requirement of Fed.R.Evid. 801(d)(2)(E) as do the other federal courts of appeals. *See, e.g., United States v. Sweeney,* 688 F.2d 1131 (7th Cir.1982); *United States v. Inendino,* 604 F.2d 458 (7th Cir.1979); *United States v. Smith,* 520 F.2d 1245 (8th Cir.1975). Perhaps the most telling analysis of the *Lehman* holding was made by Judge Friendly, when he quoted Professor Morgan's characterization of the *Lehman* ruling as "employing a time-honored judicial device to make new law without appearing

to neglect, much less to abuse, the doctrine of stare decisis." *United States v. Annunziato,* 293 F.2d 373, 380 (2nd Cir.1961) (quoting Morgan, "Admissions," 12 Wash. L.Rev. 181, 195 (1937)). Accordingly, to the extent that our decision in *Kane* was based upon the *Lehman* interpretation of the "in furtherance of the conspiracy" requirement, we overrule it and adopt the interpretation given to that phrase by the federal courts. *See, e.g., United States v. Jackson,* 549 F.2d 517, 534 (8th Cir.1977), and cases cited therein; *see also United States v. Moore,* 522 F.2d 1068, 1077 n. 5 (9th Cir.1975).

We turn, then, to the question whether the challenged statements in the instant case were admissible under the interpretation given to the "in furtherance of the conspiracy" requirement by the federal courts of appeals. In making this determination, we are guided by the admonition that "[a]lthough this phrase has a talismanic ring to it, we must not apply the standard too strictly, lest we defeat the purpose of the exception." *United States v. James,* 510 F.2d 546, 549 (5th Cir.1975). *See also United States v. Phillips,* 664 F.2d 971 (5th Cir.1981). To satisfy the test of admissibility, there need only be a showing that there is some reasonable basis for concluding that the statement was made in furtherance of the conspiracy. *United States v. Inendino, supra.*

■ Not every statement made by a co-conspirator during the continuance of a conspiracy can be said to have been made in furtherance of the conspiracy. Mere conversations, boasting, puffery, idle chatter, or purely narrative statements of past events that cannot reasonably be interpreted as having been made in an effort to advance the aims of the conspiracy should not be held to be admissible under the co-conspirator statement exception. *See, e.g., United States v. Means,* 695 F.2d 811 (5th Cir.1983); *United States v. Miller,* 664 F.2d 94 (5th Cir.1981); *United States v. Lieberman,* 637 F.2d 95 (2nd Cir.1980);

**2.** *See also Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

*United States v. Eubanks,* 591 F.2d 513 (9th Cir.1979); *United States v. James, supra.*

On the other hand, however, there is a veritable groaning board of statements that are admissible under the co-conspirator exception. For example, "puffing, boasts, and other conversation ... are admissible when used by the declarant to obtain the confidence of one involved in the conspiracy." *United States v. Miller, supra,* 664 F.2d at 98.

Statements made by a co-conspirator to allay suspicions are admissible, *United States v. James, supra,* as are statements made by a co-conspirator to allay apprehensions that potential co-conspirators may have with respect to the conduct of another co-conspirator and designed to ensure future good relations among the co-conspirators. *United States v. Overshon,* 494 F.2d 894 (8th Cir.1974). Equally admissible are the narrative statements of a co-conspirator to a co-conspirator regarding the part played by other co-conspirators and what had been done by each. *United States v. Handy,* 668 F.2d 407 (8th Cir.1982); *United States v. Halpin,* 374 F.2d 493 (7th Cir.1967). Statements made by a co-conspirator for the purpose of enlisting another party in the criminal enterprise are also admissible. *United States v. Halpin, supra.* Statements that identify a co-conspirator as the source of narcotics are held to be admissible. *United States v. Williams,* 604 F.2d 1102 (8th Cir.1979); *United States v. Lambros,* 564 F.2d 26 (8th Cir.1977); *United States v. Carlson,* 547 F.2d 1346 (8th Cir.1976); *United States v. James, supra.*

We conclude that when measured against these tests, Blakey's statements to Hevle concerning Smith's participation in the theft of the truck were properly ruled admissible by the trial court. Since Hevle twice testified that he had refused to do any additional work on the truck after he learned from Blakey that it had been stolen, it is a reasonable assumption that Blakey was seeking further assistance from Hevle in preparing the truck for sale at the time he told Hevle about the manner in which he had stolen the truck. The statements identifying the other member of the conspiracy and explaining the manner in which the theft had been committed can reasonably be construed as an attempt by Blakey to enlist Hevle in the criminal enterprise. *United States v. Miller, supra.*

■ We likewise conclude that Blakey's statement to the undercover officers in Sioux City on February 28, 1981, that "Jack was with me on the deal" was also admissible. As we have pointed out above, Blakey made numerous phone calls to the undercover officers before making any delivery of stolen property. During his first visit to the warehouse, Blakey deliberately kept Smith from discovering the exact location of the warehouse used by the undercover officers. While it is true that at the time the February 28, 1981, statement was made Smith had already come to the warehouse and had been present while Blakey negotiated the sale of the Caterpiller front end loader, this was not to be the end of his conspiracy with Blakey. Blakey's February 28, 1981, statement can reasonably be construed as having been made for the purpose of possibly securing a title for the stolen truck and advising the undercover officers that Smith had been his partner in stealing the truck, thereby assuring them that Smith was to be considered a trustworthy partner in the future theft of vehicles and their subsequent sale to the undercover officers. In this regard, we must keep in mind that it is not what the undercover officers knew regarding the activities of Smith and Blakey that is controlling, but that knowledge which Blakey attributed to those who were buying the stolen property from him. *United States v. James, supra.* Accordingly, we conclude that the February 28, 1981, statement was made in furtherance of the conspiracy. The trial court therefore did not err in admitting the video tape of the February 28, 1981, conversation between Blakey and the undercover officers.

■ Defendant also contends that the evidence presented by the State was insuf-

ficient to support the jury verdict and sustain his conviction. In ruling upon this issue, we must determine whether the evidence and reasonable inferences flowing from it sustain a rational theory of guilt. *State v. Wedemann*, 339 N.W.2d 112 (S.D. 1983). Measured against this standard, the evidence was not wanting.

The judgment of conviction is affirmed.

FOSHEIM, C.J., and DUNN, J., concur.

MORGAN, J., concurs in result.

HENDERSON, J., dissents.

MORGAN, Justice (concurring in result).

I concur in the result.

The statements made herein fall easily within the exception as adopted in *Kane*. Recognizing that the author of the majority opinion dissented on this issue in *Kane*, and the composition of the court has changed since *Kane* was written, I take exception to the narrowing of our decision in *Kane* because it is wholly unnecessary in order to reach the result in this case.

HENDERSON, Justice (dissenting).

Hearsay is not admissible as evidence unless found to fall within certain exceptions. *See* SDCL 19–16–4 for the general rule, and the exceptions in SDCL 19–16–3, SDCL 19–16–5 through SDCL 19–16–38. Three extra-judicial statements were entered into evidence and placed before the jury, over the strong objection of appellant Smith. Upon this evidence, appellant was convicted. All of these statements were rank hearsay and highly incriminatory. The statements do not fall under any exceptions to the rule against hearsay; therefore, their admission constituted prejudicial error in violation of the rules of evidence and the constitutional privilege to confront witnesses.

The State hinges its conviction on subsection 5 of SDCL 19–16–3, which provides: "A statement is not hearsay if it is offered against a party and is ... (5) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy." In order to fall within this exception, three conditions must be met. First, there must be substantial evidence of a conspiracy; second, a declaration must have been made while the conspiracy was continuing; and third, the statement must have constituted a step in furtherance of the venture. *State v. Kane*, 266 N.W.2d 552 (S.D.1978).

The three extra-judicial hearsay statements occurred in the late fall of 1980 and the early winter of 1981. This was six months after the September 8, 1980 theft of the Peterbilt truck. It occurs to me that the conspiracy to steal the truck had expired upon completion of the theft. Appellant was convicted of aiding, abetting, and/or advising in planning or committing the crime of theft, not conspiracy.[1] Thus, these statements were not made "during the course and in furtherance of the conspiracy." They were made after the objective of the conspiracy had been achieved. *See Krulewitch v. United States*, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949). "A conspiracy is terminated when its purpose has been accomplished, i.e., the target offense has been committed ...." C. Torcia, 4 *Wharton's Criminal Law* § 735 (14th ed. 1981).

I cannot fathom how the majority can view these statements as constituting a step in furtherance of the venture. To say that "Jack was with me on the deal" begs the question "who is Jack?" Apparently, Blakey had three associates by the name of Jack. Further, the word "deal" does not necessarily reflect a continuing conspiracy; rather, it begs the question as to whether or not the reference was to the theft of the Peterbilt truck on September 8, 1980. Mind you, this statement was made just short of six months after this theft. The majority opinion reaches to find that the declaration was made by Blakey while a conspiracy was continuing. Although the result of a conspiracy may be continuing, the conspiracy does not thereby become a

---

1. Instruction number 8 to the jury set forth the essential elements of aiding or abetting in the theft of a Peterbilt truck. Appellant was not charged with being an accessory after the fact.

continuing one. The conspiracy ends when its aim has been achieved. J. Weinstein & M. Berger, 4 *Weinstein's Evidence,* ¶ 801(d)(2)(E)[01] at 179–80 (1981). In this case, the fruits of the crime, as I understand it, had been disposed of prior to the extra-judicial hearsay statements. The theft had long occurred and the conspiracy to steal the truck had expired.[2]

"Under these circumstances, the hearsay declaration attributed to the alleged co-conspirator was not admissible on the theory that it was made in furtherance of the alleged criminal ... undertaking." *Krulewitch,* 336 U.S. at 442–43, 69 S.Ct. at 718, 93 L.Ed. at 794. The statements do not fall within the exception to the hearsay rule which this Court set forth in *Kane.* Therefore, the reasoning of *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), with regard to accepted violations of confrontation clause values, is not applicable. Because these statements, constituting rank hearsay and not falling within any exception to the rule against hearsay, were admitted into evidence, this appellant was denied the right to meet the witnesses against him face to face. U.S.Const. amend. VI; Article VI, § 7 of the South Dakota Constitution provides:

> In all criminal prosecutions the accused shall have the right to defend in person and by counsel; to demand the nature and cause of the accusation against him; to have a copy thereof; *to meet the witnesses against him face to face;* to have compulsory process served for obtaining witnesses in his behalf, and to a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed. (Emphasis supplied mine.)

I, therefore, respectfully dissent for the reason that the objectives of the concerted action had been accomplished prior to the making of any statements implicating Smith. As the statements were not in furtherance of any conspiracy, they did not fall within the co-conspirator hearsay exception. Appellant was prejudiced by their admission and denied his constitutional right of confrontation of witnesses. By implementation of federal rule,[3] by interpretation thereof, by judge-made law, the plain language of the federal and state constitutions has been violated. Rules of evidence should not be elevated over constitutional guarantees. Devastating it was for these two video tapes to be shown to the jury with the witness saying that the accused ("Jack") was in with him on the theft ("deal"). The jury saw and heard two films on hearsay. The accused timely objected by written motion to suppress but was overruled. I would reverse the conviction and remand for a new trial.

---

**2.** The majority opinion's supposition, concerning the possible securing of a title for the stolen truck, is pure conjecture and hypothesis and not based upon fact. Building upon hypothesis, it imputes a scienter upon appellant Smith.

**3.** Per March 27, 1978 order of this Court, this Court adopted verbatim Federal Rule 801.