UNITED STATES of America, Appellee,

v.

Walter B. HARRIS, Appellant.

No. 76–1380.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1976.

Decided Dec. 7, 1976.

William R. Wilson, Jr., Little Rock, Ark., for appellant.

Richard M. Pence, Asst. U.S. Atty., Little Rock, Ark., for appellee; W. H. Dillahunty, U.S. Atty., Little Rock, Ark., on brief.

Before LAY, BRIGHT and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

Walter B. Harris appeals his conviction by jury on one count of conspiracy to commit mail fraud in violation of 18 U.S.C. § 371. Appellant Harris alleges that the district court:[1] (1) erred in admitting the statements of the alleged coconspirator before the government established a prima facie case of conspiracy by other independent evidence; (2) erred in admitting hearsay statements of the alleged coconspirator which were not "in furtherance of" the conspiracy; and (3) abused its discretion in the questioning of defense witnesses. We affirm the conviction.

The indictment charged that appellant Harris, Edward Williams and Vernon French conspired to defraud insurance companies and to use the United States mails for the purpose of executing the scheme. More specifically the indictment alleged that the three coconspirators staged and contrived an accident in which a vehicle driven by Vernon French collided with the rear of a car owned by Harris and supposedly occupied by Harris and Williams. It was further alleged that Harris and Williams had multiple insurance policies on the date of the staged accident and submitted fraudulent claims as a result of the accident.

The district court granted Williams' motion for severance and appellant Harris and French were tried jointly. At the close of the government's case the district court entered a judgment of acquittal for French. The jury found Harris guilty and he was sentenced by the court to 20 months imprisonment.

The first issue raised by Harris concerns the admission of coconspirator Williams' insurance records. These records, which consisted primarily of claim forms allegedly fraudulent, were introduced under a stipulation as to identification but objected to as irrelevant before the government called any witnesses. Harris contends that these records should not have been admitted until the government established the existence of a conspiracy.

It is well settled that statements made in furtherance of the unlawful association are not hearsay and are admissible provided that a concert of action is established by independent evidence. *United States v. Kelley,* 526 F.2d 615, 618 (8th Cir. 1975), *cert. denied,* 424 U.S. 971, 96 S.Ct. 1471, 47 L.Ed.2d 739 (1976); *United States v. Frol,* 518 F.2d 1134, 1136 (8th Cir. 1975); *United States v. Sanders,* 463 F.2d 1086, 1088 (8th Cir. 1972). The order of proof is within the discretion of the trial judge. *United States v. Kelley, supra,* 526 F.2d at 618; *Brinlee v. United States,* 496 F.2d 351, 354 (8th Cir.), *cert. denied,* 419 U.S. 878, 95 S.Ct. 142, 42 L.Ed.2d 118 (1974). The statements may be conditionally admitted subject to being "connected up" by subsequent

---

1. The Honorable G. Thomas Eisele, United States District Judge for the Eastern District of Arkansas.

independent proof of concert of action. *United States v. Sanders, supra,* 463 F.2d at 1088; *United States v. Reed,* 446 F.2d 1226, 1231 (8th Cir. 1971); *Fabian v. United States,* 358 F.2d 187, 192 (8th Cir. 1966).

■ Turning to the record before us, we find there was subsequent independent proof of concert of action sufficient to "connect up" the statements of Williams found in the insurance records.[2] Furthermore, we note that at the time the records were received the trial judge gave a cautionary instruction admonishing the jury that the extra-judicial statements were to be considered only if the defendants' participation in the scheme was established by independent evidence. The records were not shown to the jury until near the close of the government's case, at which time the court repeated the cautionary instruction. Under the circumstances, Harris' contention of error in the admission of coconspirator Williams' insurance records is without merit.

Appellant Harris secondly contends that the district court erred in admitting hearsay statements of the alleged coconspirator Williams which were not "in furtherance of" the conspiracy. The government called as a witness A. J. Rupe, who was in the hospital during the same period as Harris and Williams. Rupe was in the hospital after staging an accident as part of his own scheme to defraud insurance companies. While in the hospital Rupe had conversations with both Harris and Williams. At trial he was allowed to testify over Harris' objection that coconspirator Williams made statements to him to the effect that the collision involving Harris, Williams and French was staged.[3] Although Harris readily admits that the statements made by Williams were during the course of the conspiracy, Harris contends the statements

---

2. In oral argument before this court appellant did not contend that the independent subsequent proof of concert of action was insufficient to connect up Williams' statements.

3. Rupe's exact responses to the government's questions were as follows:

Q I'd asked you if Edward Williams talked to you about this accident.
A Yes, one or two times.
Q Will you relate what Edward told you?
A Ed told me—he told me Bud used the wrong doctor and he asked him—
THE COURT: Who used the wrong doctor?
THE WITNESS: Bud Harris.
THE COURT: Go ahead.
BY MR. PENCE:
Q Who was Edward Williams' doctor? Did he tell you who his doctor was—Edward's.
A Ed's doctor?
Q Yes.
A Ed's doctor was T.E. Bud's doctor was Dr. Frankum.
Q What else did he tell you?
A He was talking about the wreck. I'd done seen the car and everything. We was talking about it one day and he told me—I said, "Man, it really bunged your car up, didn't it?" He said, "Yeah, it looked like it really hurt", you know, and he threw his head back and laughed and that was it.
Q Was this in or out of the hospital?
A Out of the hospital.
Q Let's go back to the hospital. You said you visited with him a couple of times. You made the statement about the doctor. Did

he say anything else about the doctors while you were in the hospital?
A About his doctor or Bud Harris' doctor?
Q Either one.
A He told me they was going to use the same doctor and Bud got Dr. Frankum and Dr. Frankum said he was complaining too much about his head and Dr. Frankum was going to send him to Little Rock to see a specialist if he didn't quit complaining.
Q Is this what Edward told you?
A Yes.
  *    *    *    *    *    *
Q Let's start again here. You say this is a couple of months after you got out of the hospital, right?
A Yes, sir.
Q And you saw Edward Williams.
A Yes, sir.
Q Now what did you say to Edward?
A Well, I came down to Little Rock and seen a doctor over my neck, and he set up a deal for me to come back—appointment for me to come back and see him. I got back to Newport and I went over to the Clinic and I went to my pickup and I seen Ed. We was talking and he was telling me—we were talking about his eye condition.
Q His eye?
A I said, "Well, you"—the way it was, I said: "Ed, you know,"—I told him, I said: "Ed, you ought to get a lot of money out of this deal—this wreck." I said: "Was you hurt all this bad?", you know. He just threw his head back and laughed. I got back in my pickup and went back to the plant to work.

were not "in furtherance of" the conspiracy and therefore were erroneously admitted.

■ The "in furtherance of" requirement arises from Rule 801(d)(2)(E) which makes admissible against a party a statement by a coconspirator during the course of and in furtherance of the conspiracy. Fed.R.Evid. 801(d)(2)(E). The inclusion of the "in furtherance of" requirement appears to have been a considered decision by Congress. Before the present Rule 801(d)(2)(E) was promulgated, Senator John L. McClellan of Arkansas strenuously advocated the abolishment of the "in furtherance of" requirement, substituting in its place a more re-

laxed standard and thereby enlarging the existing hearsay exception.[4] This suggestion was rejected, however, by Congress.[5]

The Fifth Circuit has stated that although the phrase "in furtherance of the conspiracy" has a talismanic ring to it, the standard should not be applied too strictly, lest the purpose of the exception be defeated. *United States v. James,* 510 F.2d 546, 549 (5th Cir.), *cert. denied,* 423 U.S. 855, 96 S.Ct. 105, 46 L.Ed.2d 81 (1975). We are also mindful that several commentators have noted that the courts have tended to construe broadly the requirement that the coconspirator's statement be made in further-

---

**4.** In a letter to Representative William L. Hungate, Chairman, Special Subcommittee on Reform of Federal Criminal Laws, House Committee on the Judiciary, Senator McClellan in an enclosure stated in part:

> I regret that you did not take the opportunity of the formulation of comprehensive rules of evidence to re-examine the present law dealing with the admission of the declaration of co-conspirators. Subdivision 801(d)(v), as the Advisory Committee Note indicates at p. 104, follows uncritically the "accepted pattern." Here I would urge on you a re-examination of the law in this area. Consequently, I take the liberty of commenting more expansively on my understanding on the development of the hearsay rule and its various exceptions. What I suggest, however, is that the present requirement of "furtherance" be omitted and that two new ones be added: (1) a requirement of the presence of an independent circumstantial guarantee of trustworthiness, and (2) a requirement of relevancy to the character or the execution of the conspiracy itself.
>
> * * * * * *
>
> Today, the co-conspirator declaration rule is usually framed in these terms: Any declaration by one co-conspirator, voiced in furtherance of the conspiracy and during its pendency, is admissible against each co-conspirator, subject to the laying of an independent foundation of the existence of the conspiracy and the accused's participation in it. "Development in the Law—Conspiracy," 72 Harv.L.Rev. 920, 983–84 (1959).
>
> It is my suggestion that this existing hearsay exception be enlarged by substituting for the present requirement that the declaration be in "furtherance" of the conspiracy requirements that there be facts or circumstances from which the "trustworthiness" of the declaration may be inferred and that the declaration relate to the character or the execution of the conspiracy.

> * * * * * *
>
> Criminal law conspiracy principles have been most effective in organized crime prosecutions, and there can be no doubt that the "co-conspirator's hearsay exception" has been a vital factor in their success. The continued vitality of this co-conspirator rule is absolutely essential in conspiracy prosecutions of all types. Since the agency rationale which currently supports this exception is subject to increasing criticism by the courts and by the authorities in the field, it would seem only prudent to move away from this rationale toward a more realistic basis for the exception, that is from agency to trustworthiness.
>
> * * * * * *
>
> My suggestion could be implemented by substituting the following language for Rule 801(d)(2)(v):
>
> "A statement by a co-conspirator of a party during the course of the conspiracy, relating to the character or the execution of the conspiracy, and there were facts and circumstances from which its trustworthiness may be inferred."

*Hearings on the Proposed Rules of Evidence Before the Special Subcommittee on Reform of Federal Criminal Laws of the House Committee on the Judiciary,* 93rd Cong., 1st Sess., House Hearings Supp. at 56, 58, 59 (1973), reported in Am.Jur.2d Federal Rules of Evidence, Appendix 4 at 314, 316, 317 (1975).

**5.** Fed.R.Evid. 801(d) provides in part:

> *(d) Statements which are not hearsay.* A statement is not hearsay if—
>
> * * * * * *
>
> *(2) Admission by party-opponent.* The statement is offered against a party and is * * * (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

ance of the conspiracy. *See* discussion *United States v. Overshon,* 494 F.2d 894, 899 (8th Cir.), *cert. denied,* 419 U.S. 853, 95 S.Ct. 96, 42 L.Ed.2d 85 (1974). Nevertheless, Congress has expressly retained the "in furtherance of" requirement. Furthermore, the Supreme Court continues to include this requirement in its statement of the coconspirator's rule. *See, e. g., Anderson v. United States,* 417 U.S. 211, 218, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974); *Dutton v. Evans,* 400 U.S. 74, 81, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). Therefore we conclude that the "in furtherance of" requirement remains viable in the federal courts.

 In the instant case, whether Williams' statements [6] to Rupe were in the furtherance of the conspiracy is a close question. Both Rupe and Williams were actively engaged in parallel schemes to defraud insurance companies. In this light their conversations can be viewed as mutual attempts to gather useful information to further each other's conspiracy. On the other hand appellant argues that the statements were nothing more than casual admissions of culpability by Williams to someone he had individually decided to trust. On the record before us, however, we need not determine which view is most persuasive. Assuming arguendo that appellant's position on this issue is correct, we find that the error in the admission of these statements was harmless. Rupe testified that while in the hospital he visited appellant Harris in his room a few times. On one occasion Rupe heard Harris tell a visiting preacher that he, Harris, was "in bad shape over the wreck." After the preacher left appellant Harris stated to Rupe that he (Harris) "had the preacher fooled." Harris also told Rupe he could stay in the hospital as long as he wanted. More importantly, Harris admitted to Rupe that he had been standing away from the car when the accident occurred. In light of these devastating admissions and our review of the entire record, we are satisfied that the admission

of Williams' statements as testified to by Rupe was harmless error.

◼ Finally Harris contends that the district court abused its discretion by extensively questioning defense witnesses. More particularly, Harris states that although the questions asked by the court elicited no unfavorable testimony, they were accusatory in nature and prejudicial to Harris' defense. We note at the outset, however, that the court asked several questions to both government and defense witnesses. In light of all the testimony it appears that the trial court was merely attempting to clarify the witnesses' testimony. Also the trial judge instructed the jury that none of the questions asked by the court were intended to suggest in any way or manner what verdict the jury should find. We are satisfied from the record that the trial judge impartially attempted to clarify the witnesses' testimony. *See generally United States v. McColgin,* 535 F.2d 471, 474–75 (8th Cir. 1976). We conclude that the court's questions were neither improper nor prejudicial.

Affirmed.

◼

---

6. Acts intended to be a means of expression are treated as statements (Rule 801(a)) and therefore fall within the ambit of Rule 801(d)(2)(E).