UNITED STATES of America, Appellee,

v.

Richard L. GREEN and Lucille M. Brown, Appellants.

Nos. 79–1018, 79–1019.

United States Court of Appeals, Eighth Circuit.

Submitted March 14, 1979.

Decided June 11, 1979.

Rehearing and Rehearing En Banc Denied in No. 79–1018 July 6, 1979.

William J. Riedmann, Omaha, Neb., for appellant Green.

Steven E. Achelpohl, Omaha, Neb., for appellant Brown.

Thomas D. Thalken, Asst. U. S. Atty., (on brief), and Edward G. Warin, U. S. Atty., Omaha, Neb., for appellee.

Before BRIGHT and STEPHENSON, Circuit Judges, and BOGUE,* District Judge.

PER CURIAM.

Appellants Richard Green and Lucille M. Brown appeal from their convictions on both counts of a two-count indictment. The first count alleged that both appellants had violated Section 371 of Title 18, United States Code, and named the two appellants and Donald Patterson[1] as defendant co-con-

---

* The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

1. Donald Patterson entered a plea of guilty to the second count and was sentenced prior to these appellants' trial. Count I of the indictment was dismissed as to Donald Patterson at the time of sentencing.

spirators in a conspiracy (1) to possess checks stolen from the mail and (2) to forge and utter United States Treasury checks. The second count of the indictment alleged a substantive count of possession of checks stolen from the mail in violation of Section 1708 of Title 18, United States Code.[2] The two appellants were jointly tried and convicted of each count in the District Court.[3] We affirm the conviction of each appellant on both counts.

## I. RELEVANT FACTS

The evidence presented at the trial revealed the following relevant facts. Loretta Johnson, an unindicted coconspirator, testified for the government. Her testimony revealed that on August 1, 1977, Richard Green, together with Patterson and a niece of Lucille Brown's, visited Loretta Johnson in Omaha, Nebraska. They showed her two checks issued by the State of Nebraska by and through the State Treasurer and the State Director of Administrative Services and payable to Shirley Bogan and Karen A. Byrd. Green requested that Johnson help him cash the checks and Johnson agreed to do so. Shortly thereafter, Brown and her niece visited Johnson and gave Johnson $60.00 to give to Green for the false identification cards which were to be made for cashing the checks. False social security cards were obtained by Green, Patterson and Johnson. The trio then drove to Council Bluffs, Iowa, where Johnson forged the Byrd and Bogan endorsements in the car and cashed the checks in the grocery stores using bogus identification cards. Johnson gave the cash to Green who split the money among himself, Johnson and Patterson on the return ride to Omaha.

Loretta Johnson's testimony further revealed that on August 3, 1977 Green again visited Johnson at her residence in Omaha. He was accompanied by Donald Patterson and Lucille Brown. At this time, Brown displayed some United States Treasury

checks to Johnson. Johnson agreed to assist Patterson, Green and Brown in cashing the checks. The three set out together and first picked up the false social security plates from Green's house. Next both Brown and Johnson went to Woolworth's in order to obtain pictures to use for false photo identification cards. Patterson, Green, Brown and Johnson then went to Mario's Portrait Studio where Brown and Johnson filled out applications for photo identification cards. Loretta Johnson obtained a photo identification card in the name of Elizabeth Clifton and Lucille Brown obtained a photo identification card in the name of Madeline Donofrio. These cards, as well as the false identification card for Shirley Bogan and the social security plate for Karen A. Byrd were introduced at trial. The four individuals went to Council Bluffs, Iowa, in Patterson's car. There Johnson forged the endorsements of Elizabeth Clifton and Joseph Donofrio and cashed the checks bearing their names. Similarly, Lucille Brown forged the endorsements of Madeline Donofrio and Charles Mollner and cashed the checks bearing their names.

In addition to Loretta Johnson's testimony that Lucille Brown forged the signatures of Madeline Donofrio and Charles Mollner, an expert in the analysis of handwriting testified that he could positively identify the endorsements of Charles Mollner and Madeline Donofrio to have been executed by Lucille Brown. Furthermore, the jury had for its consideration the photo identification card which allegedly belonged to Madeline Donofrio and pictured Lucille Brown. Additionally, Mario Faillo, the proprietor of Mario's Portrait Studio, as well as Hardy Meeks, who took orders from Richard Green for metal social security plates in several different names, testified at the time of trial. Moreover, each of the six payees to whom the checks were issued and

---

**2.** Although appellants appeal from their conviction on both counts of the indictment, the vast majority of their allegations of error pertain to the conspiracy count rather than the substantive count.

**3.** The Honorable Robert V. Denney, United States District Judge for the District of Nebraska.

mailed, denied ever receiving a check or authorizing anyone to receive or endorse the check for the named payee. All six checks had been cashed with forged endorsements.

## II. *ADMISSIBILITY OF THE EXTRA-JUDICIAL STATEMENTS UNDER FED.R.EVID. 801(d)(2)(E)*

At trial, Loretta Johnson was permitted to testify that on the second trip to Council Bluffs, Iowa, Donald Patterson informed her that Richard Green had taken the checks out of the mailboxes and that Patterson had served as a lookout while Green was doing so. Both appellants objected to this testimony on the basis that it was hearsay. The Court allowed the statements into evidence under Fed.R.Evid. 801(d)(2)(E). The testimony which the trial court allowed into evidence under Fed.R. Evid. 801(d)(2)(E) was as follows:

Q. (By Assistant United States Attorney) "Miss Johnson, going back to the conversation that you had with Donnie Patterson in the car while Lucille and Richard were in the store cashing the check. Now, you did have a conversation with Donnie Patterson then?

A. Yes.

Q. And was that about the checks?

A. Yes.

Q. What did Donnie Patterson say about the checks?

A. Well, I asked him how did they get the checks and he said that Richard took them out from the mailbox, and he said he was watching out for them while he took them? (Sic.)

Q. That Donnie was watching out for them?

A. Yes."

■ Appellants' arguments against the admissibility of Donald Patterson's statements to Loretta Johnson are two-fold. First, appellants argue that Patterson's statements do not meet the first part of the Fed.R.Evid. 801(d)(2)(E) requirements because the statements were not made during the course of the conspiracy. Appellants maintain that because the conspiracy as charged in the indictment did not refer to the stealing of any United States Treasury checks but only to the unlawful possession and knowing forgery of the checks the statements were improperly admitted. It is well settled that the scope of the conspiracy charged in the indictment does not limit the application of Fed.R.Evid. 801(d)(2)(E). In fact, the rule is frequently invoked in the absence of any charge of conspiracy in an indictment. *See, e.g. United States v. DeVerse,* 464 F.2d 80, 84 (8th Cir. 1972), *cert. denied,* 409 U.S. 988, 93 S.Ct. 342, 34 L.Ed.2d 253 (1972); *United States v. Moss,* 544 F.2d 954, 957 (8th Cir. 1976), *cert. denied* 429 U.S. 1077, 97 S.Ct. 822, 50 L.Ed.2d 797 (1977). Therefore, the indictment does not govern the applicability of Fed.R.Evid. 801(d)(2)(E).

■ Furthermore, it is clear that the statements in question were made during the course of the conspiracy. The statements by Donald Patterson were made to Loretta Johnson while Lucille Brown and Richard Green were cashing the forged checks which are the subject of this action. The statements were properly admissible as having been made in the course of the conspiracy because a course of action had already been established by independent evidence. *United States v. Harris,* 546 F.2d 234, 235 (8th Cir. 1976); *United States v. Kelley,* 526 F.2d 615, 618 (8th Cir. 1975), *cert. denied,* 424 U.S. 971, 96 S.Ct. 1471, 47 L.Ed.2d 739 (1976); *United States v. Frol,* 518 F.2d 1134, 1136 (8th Cir. 1975) and *United States v. Sanders,* 463 F.2d 1086, 1088 (8th Cir. 1972).

■ Appellants have also urged that the statements were improperly admitted under Fed.R.Evid. 801(d)(2)(E) because they were not made "in furtherance" of the conspiracy. Although there has been a great deal of debate about the wisdom of the "in furtherance" requirement, this Court has found the requirement to be applicable in federal courts. *See, e.g. United States v. Harris, supra,* at 238. Whether these statements were made in furtherance of the

conspiracy presents a close question. The statements made by Donald Patterson to Loretta Johnson appear to have been casual comments which were neither intended to further nor had the effect of furthering the conspiracy in any way. The statements were not "in furtherance" of the conspiracy and therefore did not qualify for admission under Fed.R.Evid. 801(d)(2)(E). In view of the overwhelming amount of evidence against Richard Green and Lucille Brown, however, the admission of these hearsay statements was harmless error. *See, e.g. United States v. Harris, supra*, at 238, and *United States v. Moss, supra*, at 960.

III. *ADMISSIBILITY OF EXTRAJUDICIAL STATEMENTS AND THE ACCUSED'S RIGHT OF CONFRONTATION*

■ Under the circumstances presented here, we cannot find that the admission of the inadmissible hearsay was constitutional error. In *Dutton v. Evans*, 400 U.S. 74, 82, 91 S.Ct. 210, 216, 27 L.Ed.2d 213 (1970), the United States Supreme Court observed that the limited scope of Fed.R.Evid. 801(d)(2)(E) was "a product, not of the Sixth Amendment, but of the Court's 'disfavor' of 'attempts to broaden the already pervasive and wide-sweeping nets of conspiracy prosecutions.' *Grunewald v. United States*, 353 U.S. 391, 404, 77 S.Ct. 963, 974, 1 L.Ed.2d 931." In the instant case, the hearsay statements would have been admissible if they had been offered to prove something other than the truth of the matter asserted. For example, under some circumstances the statement of Patterson could have been offered simply to show that the statement had been made and no hearsay problem would have been presented. The introduction of the type of hearsay which was admitted in this case is qualitatively different from the introduction of evidence which would not be admissible for any purpose. In *Dutton, supra*, the Supreme Court stated:

From the view-point of the Confrontation Clause, a witness under oath, subject to cross-examination, and whose demeanor can be observed by the trier of fact, is a reliable informant not only as to what he has seen but also as to what he has heard. 400 U.S. at 88, 91 S.Ct. at 219.

Loretta Johnson was testifying as to what she had heard and the appellants' right of confrontation was not abridged by this testimony. No error of constitutional magnitude occurred.

■ Assuming, *arguendo*, that the introduction of the hearsay statements injected constitutional error into the record, such error was harmless beyond a reasonable doubt. *Chapman v. State of California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). This Court recently articulated the standard as follows:

If, upon the record as a whole, this court is certain that the admission of the evidence did not influence the jury, or had but a slight effect, the verdict should stand. *United States v. Weir*, 575 F.2d 668, 671 (8th Cir. 1978).

Reviewing the record as a whole, this Court finds that the admission of the hearsay statements on the jury's verdict was, at most, slight.

■ Finally, we reject appellants' claim that an on-the-record finding of compliance with the confrontation clause must be made at the time of trial. In *United States v. Bell*, 573 F.2d 1040, 1044 (8th Cir. 1978) we set forth the findings that the trial court should make before admitting the extra-judicial statement of a co-conspirator pursuant to Fed.R.Evid. 801(d)(2)(E). We decline to expand the requirement enumerated in *United States v. Bell, supra*, to conclude specific on-the-record findings involving the confrontation clause.

IV. *APPELLANT RICHARD L. GREEN'S REMAINING CONTENTIONS*

■ Appellant Green argues that his right to a speedy trial as guaranteed by the Sixth Amendment to the United States Constitution was infringed. The delay between the time of indictment and the time of trial, which was a seven-and-a-half month period, was occasioned by Appellant

Green's request for a continuance. In view of this fact, we will not further consider Appellant Green's argument on this subject.

Appellant Green has also maintained that his trial on the present action violated the double jeopardy clause of the Fifth Amendment to the United States Constitution. Appellant Green was convicted in the Southern District of Iowa on an indictment charging: (1) the possession on August 8, 1977, of a stolen treasury check drawn payable to Peter P. Rother on August 3, 1977, in violation of Title 18, United States Code § 1708 and (2) the forged endorsement of the Rother check on August 8, 1977 in violation of Title 18, United States Code § 495. No conspiracy was charged in Iowa. The Rother check which was the subject of the Iowa prosecution was not the subject of any charges or enumerated as an overt act of the conspiracy in the Nebraska indictment. The Iowa indictment charged that the forged endorsement of the Rother check occurred on August 8, 1977. The date of the conspiracy alleged in the Nebraska indictment was August 1–3, 1977. The prosecutions were not for the same offenses in law or in fact. *See, e. g. Kowalski v. Parratt*, 533 F.2d 1071 (8th Cir. 1976), *cert. denied*, 429 U.S. 844, 97 S.Ct. 125, 50 L.Ed.2d 115 (1976). The Iowa and Nebraska indictment pertained to distinct, different and separate offenses. We consequently reject the double jeopardy argument forwarded by Appellant Green.

Appellant Green also argues that the conviction must be reversed because the evidence was clearly insufficient to prove guilt beyond a reasonable doubt. In view of the substantial amount of evidence concerning Green's guilt, we find Appellant Green's argument to be without merit. Finally, Green argues that the trial court abused its discretion by imposing a five-year sentence of imprisonment to run consecutively to the Iowa sentence of five years. We find no evidence of any abuse of discretion and the sentence will therefore stand.

## V. *LUCILLE BROWN'S REMAINING CONTENTIONS*

Appellant Brown appeals from the admission into evidence of an application for a photo identification card which bore her picture and the name and address of Mrs. Madeline S. Donofrio. When the exhibit was handed to Loretta Johnson, the following words were typed at the bottom of the exhibit, "INFORMATION SUPPLIED BY MARIO'S I.D. SHOP—LUCILLE BROWN PICTURED." These words were removed from the exhibit before it was presented to the jury. Counsel for Appellant Brown objected to the introduction of the exhibit on the basis that Loretta Johnson's in-court identification of Lucille Brown as being the person pictured on Madeline Donofrio's identification application, Exhibit 17, was prompted by the printed words, "LUCILLE BROWN PICTURED." The Court overruled the objection on the basis that Loretta Johnson had made an independent in-court identification of Lucille Brown. It is well settled that the trial court has broad discretion concerning the admissibility of evidence at trial. The admission of such evidence will only be grounds for reversal if it is determined that the trial court abused that discretion. *See, e. g. United States v. Fuel*, 583 F.2d 978, 988 (8th Cir. 1978). We find no abuse of discretion in the admission of the exhibit in question.

The final argument raised by Appellant Brown is that the trial court erred in permitting the jury to consider the allegations contained in Count II of the indictment involving the Nebraska state checks. As there was sufficient evidence linking Appellant Brown to these State checks for the issue to have been presented to the jury, we find this argument to be without merit.

Judgment affirmed.