UNITED STATES of America, Appellee,

v.

Terry Dee SNIDER, Appellant.

UNITED STATES of America, Appellee,

v.

Billy Gene RENEAU, Appellant.

UNITED STATES of America, Appellee,

v.

Sheri L. ABLE, Appellant.

Nos. 83–1004, 83–1006 and 83–1009.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 15, 1983.

Decided Nov. 14, 1983.

Rehearings Denied Dec. 14 and
Dec. 20, 1983.
Certiorari Denied March 19, 1984.
See 104 S.Ct. 1613.

R. Thomas Day, Kansas City, Mo., for appellant Snider.

Willard B. Bunch, Campbell, Erickson, Cottingham, Morgan & Gibson, John Edward Cash, Kansas City, Mo., for appellant Reneau.

Gregory L. Vranicar, Kansas City, Mo., for appellant Able; Rich, Granoff, Levy & Gee, Kansas City, Mo., of counsel.

Robert G. Ulrich, U.S. Atty., J. Whitfield Moody, Asst. U.S. Atty., Kansas City, Mo., for appellee.

Before HEANEY, Circuit Judge, HENLEY, Senior Circuit Judge, and REGAN *, Senior District Judge.

---

* The Honorable JOHN K. REGAN, Senior District Judge, United States District Court for the Eastern District of Missouri, sitting by designation.

HEANEY, Circuit Judge.

Terry D. Snider, Billy Gene Reneau, and Sheri L. Able appeal their convictions on a two-count indictment for conspiracy to possess marijuana with intent to distribute and possession of marijuana with the same intent. Because we find a prejudicial variance between the charge in the indictment and the proof offered at trial, we reverse all three conspiracy convictions. We affirm the convictions on the possession count, however, because we find the variance did not taint the jury's verdict on that count.

## I. BACKGROUND.

On February 26, 1979, Jerry Carr, Connie Carr, and David Forsythe took title to a 187-acre farm near Leeton in Johnson County, Missouri. The record is silent concerning the activities on this farm until October, 1979, when Earl Edwin Austin hid out there after robbing a bank in Boulder, Colorado. Carr, Forsythe, and Richard Yost were growing marijuana on the 187-acre farm at that time. While at the farm, Austin, a professional bank robber who admitted to nineteen felony convictions, offered to rob a bank to finance the operation. He left the farm in late 1979 and robbed a bank in Texas on February 26, 1980. The authorities arrested Austin in Arizona on March 1, 1980. All information concerning the activities on the 187-acre farm begins and ends with Austin's involvement.

On January 12, 1981, Jerry Carr, Forsythe, and Billy Gene Reneau signed an agreement to purchase a 240-acre farm in Johnson County, Missouri. That spring and summer, Able, Snider, and Reneau helped with the marijuana growing operation on the 240-acre farm. On September 17, 1981, federal and state agents, search warrants in hand, raided the 240-acre farm. The agents found cut marijuana drying in the barn and unharvested marijuana growing in the fields. Appellant Able was among those

arrested on the farm the day of the raid. The agents found a large quantity of marijuana in her car which was parked in one of the farm buildings.

Proceeding on the theory that the activities on the 187-acre farm and the 240-acre farm evidenced one continuing conspiracy, the government returned an indictment charging the appellants, Yost, Forsythe, Jerry Carr, John Klinefelter, Douglas Carr, Fred Box, and Delbert Stiles with conspiracy and possession of marijuana with intent to distribute in violation of 21 U.S.C. §§ 846, 841(a)(1), and 18 U.S.C. § 2 (counts one and two).[1] When the case went to trial, however, only the appellants, Box, and Stiles remained as defendants. The government had dropped the charges against Klinefelter because of his juvenile status; Douglas Carr and Yost are still fugitives; and Forsythe and Jerry Carr pled guilty the morning of trial.

None of the remaining defendants had any connection to the 187-acre farm. The trial court nevertheless permitted Austin to testify, over the objection of defense counsel, about his exploits and dealings with Yost, Forsythe, and Carr on the 187-acre farm. On November 8, 1982, the jury found Reneau, Able, and Snider guilty, but acquitted Box and Stiles. This appeal followed.

## II. DISCUSSION.

### A. The Conspiracy Conviction.

All three of the appellants contend the government failed to prove the single conspiracy charged in the indictment, and instead proved two separate conspiracies: one involving the 187-acre farm near Leeton, Missouri, in which Austin participated, and another involving the appellants' activities on the 240-acre farm. The appellants further contend that this variance between the crime charged in the indictment and the

---

1. A third count charged Jerry Carr, Douglas Carr, Yost, and Klinefelter with use of firearms in the commission of a felony in violation of 18 U.S.C. § 924(c)(1). This count was severed prior to trial. Counts four and five charged Yost with other firearms violations.

proof at trial prejudiced their right to a fair trial. We agree and hold that the error substantially affected the jury's verdict on the conspiracy count. We therefore reverse all three conspiracy convictions.

### 1. Single vs. Multiple Conspiracies.

■ The essence of a conspiracy is an agreement to commit an illegal act. *United States v. Boone,* 641 F.2d 609, 611 (8th Cir.), *cert. denied,* 454 U.S. 831, 102 S.Ct. 129, 70 L.Ed.2d 109 (1981); *United States v. Cohen,* 583 F.2d 1030, 1039 (8th Cir.1978). The problem is to determine whether one overall agreement binds all of the participants or whether distinct groups of individuals are engaged in "separate adventures of like character." *See Kotteakos v. United States,* 328 U.S. 750, 769, 66 S.Ct. 1239, 1250, 90 L.Ed. 1557 (1946); *United States v. Jackson,* 696 F.2d 578, 582–583 (8th Cir. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1531, 75 L.Ed.2d 952 (1983). Multiple groups and the performance of separate crimes or acts do not rule out the possibility that one overall conspiracy exists. *See United States v. Zemek,* 634 F.2d 1159, 1167 (9th Cir.1980), *cert. denied,* 452 U.S. 905, 101 S.Ct. 3031, 69 L.Ed.2d 406 (1981). The common purpose of a single enterprise must motivate each participant and each act, but mere knowledge of another similarly motivated conspiracy or an overlap in personnel do not prove one overall agreement. *See United States v. Jackson, supra,* 696 F.2d at 582–584; *United States v. Bertolotti,* 529 F.2d 149, 155 (2d Cir.1975).

The government proved two similarly motivated but distinct conspiracies. The first conspiracy began some time prior to October, 1978, and included an agreement among Yost, Forsythe, Carr, and Austin that Austin would help finance the 187-acre farm with stolen money. The government's proof of this conspiracy ends where Austin's testimony ended—February, 1980. The second conspiracy, the one charged in the indictment, began sometime early in 1981. No evidence links these two conspiracies.

■ The participation of Carr, Forsythe, and Yost in both conspiracies does not prove one mutual agreement binding Austin and the appellants. Common actors are not a sufficient nexus to prove one overall conspiracy. *Kotteakos v. United States, supra,* 328 U.S. at 773–774, 66 S.Ct. at 1252; *United States v. Jackson, supra,* 696 F.2d at 585; *United States v. Bertolotti, supra,* 529 F.2d at 155. There must be proof that the appellants joined an enterprise that began prior to October, 1978, and operated more or less continuously until the raid.

The government bases its argument for a single conspiracy on *United States v. Lemm,* 680 F.2d 1193, 1204 (8th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 739, 74 L.Ed.2d 960 (1983). In *Lemm,* the Court found one overall agreement bound the participants in an arson for profit ring even though the lower level personnel changed over time. One man commanded the entire network. The Court first found the operation was a RICO enterprise.[2] The Court then found a single conspiracy is also indicated "where, as here, the RICO enterprise has one major goal which is accomplished through a predictable routine and where the enterprise has an infrastructure marked by a continuous existence." *Id.* at 1203; see also *United States v. Winter,* 663 F.2d 1120, 1136 n. 25 (1st Cir.1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 1250, 75 L.Ed.2d 479 (1983). Later participants in the *Lemm* conspiracy were chargeable because they knowingly contributed to efforts in furtherance of the continuing conspiracy. *United States v. Lemm, supra,* 680 F.2d at 1204.

2. In *Lemm,* the government chose to indict the appellants under the second prong of the statutory definition of enterprise in the RICO statute, 18 U.S.C. § 1961(4). A question presented on appeal was whether the government proved an "association in fact" for the "purpose of committing acts of arson and defrauding insurance companies." The government had to show the associational enterprise possessed "common purpose, continuity of structure and personnel, and structure distinct from the pattern of racketeering." *United States v. Lemm,* 680 F.2d 1193, 1198 (8th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 739, 74 L.Ed.2d 960 (1983).

In the instant case, the government did not prove that a common infrastructure supported both conspiracies. No evidence indicated that Yost, Forsythe,. or Carr, individually or together, operated the 187-acre farm and the 240-acre farm as a single enterprise.[3] The success of the 240-acre farm did not depend on the earlier farming operation. The government argues that Austin's testimony that he gave Carr and Yost $10,000 for a payment on their farms in early 1980 provides a link. This contention is meritless because Carr and Yost told Austin they needed the money to make a payment the next day and the 240-acre farm was not purchased until January, 1981. The government may have proved Carr, Forsythe, and Yost were the hub of two conspiracies, "but failed to show that there was some kind of rim binding the spokes." *United States v. Durades,* 607 F.2d 818, 819–820 (9th Cir.1979). Nothing in the nature and the scope of the 240-acre farm operation would have notified the appellants that they were part of an ongoing conspiracy beginning years earlier on a different farm. *Cf. United States v. Bertolotti, supra,* 529 F.2d at 154.

Viewing the evidence in the light most favorable to the verdict,[4] we are convinced that a jury could not reasonably infer that one overall agreement joined the appellants and their activities on the 240-acre farm in 1981 to the earlier activities of Yost, Forsythe, Carr, and Austin.[5]

2. Prejudice.

Where a single conspiracy is alleged, but multiple conspiracies are proven, variance has occurred. *See, e.g., Kotteakos v. United States, supra,* 328 U.S. at 755–756,

66 S.Ct. at 1243; *Berger v. United States,* 295 U.S. 78, 80, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935); *United States v. Jackson, supra,* 696 F.2d at 584. The question then becomes whether the variance so prejudiced the appellants as to entitle them to a reversal of their conspiracy convictions. Reversal is required if we "cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *Kotteakos v. United States, supra,* 328 U.S. at 765, 66 S.Ct. at 1248. Because Austin's testimony concerning substantial crimes unrelated to the appellants clearly prejudiced them, we reverse. *See United States v. Jackson, supra,* 696 F.2d at 583; *United States v. Read,* 658 F.2d 1225, 1230 (7th Cir.1981).

Austin's testimony provided the jury with a window into the world of a hardened criminal. Austin, forty-one years old at the time of trial, admitted to nineteen felony convictions including assault and battery, auto theft, burglary, and threatening the life of the President of the United States. He specialized in bank robbery for which he has twelve convictions. At the time of trial, Austin was incarcerated under consecutive federal sentences totaling sixty-five years.

Austin apparently met Carr late in 1978 while Austin was serving a sentence for bank robbery in a halfway house in Kansas City. He left Kansas City in January, 1979, in violation of his parole after obtaining money from Carr. He testified that he resumed robbing banks at that time, and by October, 1979, he needed a place to hide.

---

**3.** The government's proof at trial also referred to a 330-acre farm also located in Johnson County, Missouri, which Carr and Forsythe purchased subject to an installment sales contract on January 19, 1981. This farm did not link the conspiracies.

**4.** *E.g., United States v. Jackson,* 696 F.2d 578, 582 n. 1 (8th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1531, 75 L.Ed.2d 952 (1983); *United States v. Luschen,* 614 F.2d 1164, 1174 (8th Cir.), *cert. denied,* 446 U.S. 939, 100 S.Ct. 2161, 64 L.Ed.2d 793 (1980).

**5.** The government argues that the appellants' multiple conspiracy claims should be rejected because they did not renew their motion for severance from Yost, Carr and Forsythe at the close of the evidence and that a motion for severance would have been properly rejected by the trial court. Misjoinder was not an issue once Forsythe and Carr pled guilty (Yost was still a fugitive). The issue then became the relevance of Austin's testimony in proving the indictment. *The appellants properly objected to the relevance of Austin's testimony.*

Carr took him in at the 187-acre farm near Leeton. In return for this favor, Austin offered to rob a bank to finance Carr's marijuana-growing operation. He cased some local banks but found none of them suitable. Austin left approximately $28,000 from a prior bank robbery with Carr when he left the farm in November, 1979. On February 26, 1980, Austin robbed a bank in Houston, Texas, of $86,000. He turned $15,000 of this money over to Forsythe and Carr, $5,000 "for their trouble" and $10,000 as an investment. The authorities finally caught up with Austin in Tucson, Arizona, on March 1, 1980.

A limiting instruction might have prevented the jury from transferring guilt properly associated with Austin's crimes to the appellants, but the court did not give one. In *United States v. Jackson, supra,* we held

> the participants in separate but jointly tried conspiracies should at least be afforded the protection of explicit limiting instructions. And, when such instructions have not been given, this Court on appeal should give heightened scrutiny to the defendant's claim that the jury erroneously "transfer[red] guilt from one to another and [found] the defendants guilty of an overall conspiracy."

*United States v. Jackson, supra,* 696 F.2d at 585–586, *quoting United States v. Varelli,* 407 F.2d 735, 747 (1969). *See United States v. Lindsey,* 602 F.2d 785, 787 (7th Cir.1979) (defendant entitled to multiple conspiracy instruction and instruction that evidence relating to other conspiracies cannot be held against him or her); *United States v. Griffin,* 464 F.2d 1352, 1357 (9th Cir.), *cert. denied,* 409 U.S. 1009, 93 S.Ct. 447, 34 L.Ed.2d 302 (1972) (emphasizing the importance of a cautionary instruction).

The court's instructions to the jury in this case directed them to consider only whether the defendants were members of *the* conspiracy. The jury was not instructed to compartmentalize the evidence relevant only to the earlier conspiracy involving Austin. In fact, the jury had no reason to disregard Austin's testimony in relation to the appellants because the other participants in the earlier conspiracy were not on trial. The jury was led to assume that Austin's bank robbing exploits somehow related to the appellants' activities on the 240-acre farm. There can be little doubt, therefore, that Able, Snider, and Reneau suffered from "unwarranted imputation of guilt from other's conduct." *Kotteakos v. United States, supra,* 328 U.S. at 765, 66 S.Ct. at 1248.

In sum, the indictment charged the appellants with a single conspiracy. The proof at trial demonstrated the existence of a conspiracy involving Austin and the 187-acre farm which ended sometime in 1980. The evidence also proved a second conspiracy, involving some of the same actors, which commenced in the winter of 1981. In view of the inflammatory nature of Austin's testimony and the lack of a limiting instruction, we hold this variance between the indictment and the proof at trial substantially prejudiced the appellants' right to a fair trial on the conspiracy count and reverse those convictions.

### B. Substantive Counts.

 Each of the appellants also challenge their convictions for possession with intent to distribute. Reversal of the appellants' conspiracy convictions does not also necessitate reversal of the substantive counts. In some cases, the evidence of a defendant's guilt on the substantive charges is so strong that the conviction on those charges must be affirmed despite a prejudicial variance. *United States v. Jackson, supra,* 696 F.2d at 588; *United States v. Johnson, supra,* 515 F.2d at 736; *United States v. Varelli, supra,* 407 F.2d at 748. Here, the government presented very convincing evidence that each of the appellants had a possessory interest in the large marijuana crop harvested on the 240-acre farm. Their convictions for possession with intent to distribute are therefore affirmed.

Law enforcement agents arrested Able on the farm during the September 17 raid. At that time, she admitted to owning a Karman Ghia parked in one of the farm

buildings. When the agents opened the trunk of the car pursuant to a search warrant, they found two bags, the size of small grocery sacks, filled with dried marijuana. In addition, Donald Clark testified that he worked with Able in the field of the 240-acre farm harvesting the marijuana crop. He testified that Able arrived at the farm around mid-August, 1981, and that she and her boyfriend, John Klinefelter, worked as a team harvesting the marijuana crop. Klinefelter would cut the plants and Able bundled them. Klinefelter and Able told Clark they wanted to go to California with their cut of the profits from the operation. Sheila Lawrence corroborated Clark's testimony. She saw Able on the farm in early September, 1981.

In his testimony, Clark also gave a detailed account of Snider's association with the 240-acre farm. Carr drafted Clark into the operation in May, 1981. When Clark arrived on the farm, he observed small marijuana plants growing on tilled ground. The first week Clark worked with others to transplant growing plants from containers into the ground. Clark testified that Snider drove over from the 330-acre farm and assisted with the transplanting. Soon after the transplanting stage was complete, the budding stage began. Clark testified that Snider drove over to the 240-acre farm daily to help pinch the buds off the plants to make them put out more stalks. The last stage Snider assisted with was cutting the non-potent male plants. Some time during their work together, Snider confided to Clark that he was planning to go to Florida with his share. Snider told Clark he had the option of taking either cash or part marijuana, part cash with him to Florida. Again, Sheila Lawrence corroborated Clark's testimony. She testified that she went with Yost to the 330-acre farm a number of times and met Snider there.

Clark and Lawrence also connected appellant Reneau to the marijuana farming operation. Lawrence met Reneau when she returned to the farm for a visit on September 8, 1981. She testified that Reneau left the farm house in the morning and came back in the evening. Clark testified that he first met Reneau during the budding stage of the operation. Yost told Clark that Reneau was "part of the money behind the operation." Reneau also assisted with the cutting and the harvesting. Clark testified that Carr told him he was taking the dried marijuana to Reneau's and Snider's houses in the city. In addition, Reneau's signature was on the installment sales contract for the 240-acre farm.

The strength of the evidence against the appellants on the possession charge persuades us that on this count, the variance "did not influence the jury or had but a slight effect." *Kotteakos v. United States, supra,* 328 U.S. at 764, 66 S.Ct. at 1247. Moreover, the jury was far less likely to transfer guilt associated with Austin's inflammatory testimony to the appellants' substantive offenses. Austin never visited the 240-acre farm or observed the appellants at work there. His testimony related solely to the conspiracy count. Because the evidence on the possession count was substantial and the prejudicial effect of the variance on that count was minimal, we uphold all three possession convictions.

#### C. Evidentiary Challenges.

The appellants challenge a number of the trial court's evidentiary rulings. Because we have reversed the appellants' conspiracy convictions, we will discuss these allegations of error only as they relate to the substantive possession convictions.

Both Clark and Lawrence related to the jury statements attributed to Yost and other coconspirators. The appellants argue that these statements are inadmissible hearsay. Under Fed.R.Evid. 801(d)(2)(E), such declarations are not hearsay and are admissible if the government shows by the preponderance of the independent evidence that the statements were made during the course and in furtherance of a conspiracy to which the defendant and the declarant were

parties.[6] *United States v. Magnuson,* 680 F.2d 56, 58 (8th Cir.1982); *United States v. Nelson,* 603 F.2d 42, 44 (8th Cir.1979). The appellants dispute the adequacy of the independent evidence of a conspiracy, relying somewhat on the variance between the indictment and the proof at trial. They also challenge the trial court's determination that Yost's statements to Lawrence were in furtherance of the conspiracy.

■ Our holding that a prejudicial variance existed between the proof adduced at trial and the indictment does not retroactively render coconspirator statements inadmissible. The admissibility determination turns on the independent evidence of a conspiracy. Coconspirator statements are admissible even if no conspiracy is charged. *United States v. Scavo,* 593 F.2d 837, 845 (8th Cir.1979); *United States v. Miller,* 644 F.2d 1241, 1244 n. 5 (8th Cir.), *cert. denied,* 454 U.S. 850, 102 S.Ct. 289, 70 L.Ed.2d 140 (1981). When conspiracy is charged, statements made by coconspirators which are outside the scope of the conspiracy charged may be admissible. *United States v. Green,* 600 F.2d 154, 157 (8th Cir.1979). Thus, our reversal of appellants' conspiracy conviction does not govern the admissibility of coconspirator statements.

■ Clark's testimony provided enough independent evidence of a conspiracy · to meet the applicable preponderance of the evidence standard. Clark observed all three of the appellants working on the 240-acre farm. Appellant Reneau argues Clark's testimony should be discredited, citing his involvement in the operation and subsequent cooperation with the government; inconsistencies between prior statements and his testimony at trial; and that he is legally blind, able to identify the defendants only at close range. We find none of the reasons persuasive. Clark's testimony as corroborated by Lawrence's testimony and other circumstantial evidence, adequately support the trial court's admissibility determination.

■ When Lawrence arrived on the farm, Yost gave her a tour and described the operation. During the course of her stay, Yost commented to her about the participation of people she met there. The appellants' contention that these statements were not in furtherance of the conspiracy and are hence inadmissible presents a difficult question. Although courts have debated the wisdom of the "in furtherance" requirement, this Court has upheld it. *See, e.g., United States v. Green, supra,* 600 F.2d at 157; *United States v. Harris,* 546 F.2d 234, 238 (8th Cir.1976). A conspirator's casual comments to people outside or inside the conspiracy do not meet the "in furtherance" requirement. *United States v. Provenzano,* 620 F.2d 985, 1000–1001 (3d Cir.), *cert. denied,* 449 U.S. 899, 101 S.Ct. 267, 66 L.Ed.2d 129 (1980); *United States v. Green, supra,* 600 F.2d at 157. To be admissible, the statements must somehow advance the objectives of the conspiracy, not merely inform the listener of the declarant's activities. *United States v. Eubanks,* 591 F.2d 513, 520 (9th Cir.1979) (per curiam).

[11] The statements Yost made to Lawrence could be construed as intended to impress her with his enterprise, rather than further the conspiracy. Yost brought Lawrence to the 240-acre farm in March, 1981, where she stayed for six weeks. According to her account, she did nothing while on the farm other than smoke marijuana, watch television, and keep Yost company. The first and last time she visited the fields was when Yost gave her a tour of the farm on her arrival. It is feasible, as the district court states, that Lawrence played down her role in the conspiracy while testifying. Nevertheless, nothing in the record suggests that Yost's descriptions to Lawrence of the operation, and the duties of the participants, in any way furthered the objectives of the conspiracy.

---

6. Fed.R.Evid. 801(d)(2)(E) provides:

 (d) Statements which are not hearsay. A statement is not hearsay if—

 * * * *

 (2) The statement is offered against the party and is * * * (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

If the trial court erred in admitting Yost's statements to Lawrence, the error was harmless beyond a reasonable doubt. In assessing the evidence of guilt on the substantive counts, we disregarded these statements. There is no question that statements made to Clark were in furtherance of the conspiracy since they assured his informed participation. Thus, the court properly admitted all of Clark's observations plus the statements made to him by various participants. Clark's testimony, together with other circumstantial evidence, provided the strongest grounds for convicting the appellants on the substantive counts.

The appellants also contend the district court erred in not striking Lawrence's entire testimony because her inconsistent statements to the jury evinced an unwillingness or inability to tell the truth. The appellants hinge this contention on Lawrence's testimony concerning the collateral matter of whether she and Yost slept in the same room while she was at the farm. On cross-examination, Lawrence first denied sleeping with Yost and later retracted her denial. The court allowed defense counsel to examine Lawrence as to the reasons for this discrepancy and to argue the issue of her credibility in closing arguments.

It is not the prerogative of the trial court to decide the credibility of witnesses. *United States v. Hemphill*, 544 F.2d 341, 344 (8th Cir.1976), *cert. denied*, 430 U.S. 967, 97 S.Ct. 1648, 52 L.Ed.2d 358 (1977). The court instructed the jury on their duty to judge the credibility of witnesses and their ability to wholly or partially reject the testimony of a witness they found knowingly testified falsely on a material matter. The issue of Lawrence's credibility was thus properly left to the jury.

The appellants' final two contentions are also without merit. Able maintains that the marijuana discovered in her car the day of the raid should have been suppressed because the affidavit for the search warrant was insufficient. The affidavit stated that officers found Able's car in a shed used to store marijuana. The officer smelled marijuana coming from the car. These facts in the circumstances of this case provide probable cause to search Able's car. Snider contends the district court erred in not allowing an inconsistent written statement made by Clark to be passed to the jury. Since this statement was only admissible for impeachment purposes, the court properly declined to permit the statement to be passed to the jury.

### III. CONCLUSION.

Because we find that the variance between the single conspiracy charged in the indictment and the multiple conspiracies proved at trial prejudiced the appellants' rights to a fair trial on the conspiracy count, we reverse the appellants' conspiracy convictions. Even excluding the inadmissible hearsay statements made to Lawrence, however, we find the evidence against the appellants on the possession count so strong that we decline to reverse their convictions on that count. Accordingly, the judgment of the district court is affirmed in part and reversed in part.