**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Norman POTTS, Defendant–Appellant.**

**No. 86–2419.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 11, 1987.
Decided Aug. 18, 1987.

---

HARLINGTON WOOD, JR., Circuit Judge.

The defendant, Norman Potts, was charged, along with four other defendants, with participating in an altered postal money order scheme operating from the Indiana State Prison, Michigan City, Indiana. Potts was charged with and convicted of one count of conspiracy to transmit and to present altered postal money orders in violation of 18 U.S.C. §§ 371, 500, and nine counts of aiding and abetting transmission and presentment of altered postal money orders, 18 U.S.C. §§ 2, 500.[1]

## I. FACTUAL BACKGROUND

The evidence showed that in 1981, Potts, a professor in the Theater Arts Department at Northern Illinois University, purchased at four locations 100 postal money orders in the amount of only one dollar each. Potts acted at the direction of William Gibson, an inmate at the Indiana State Prison. Potts became acquainted and began corresponding with Gibson after he answered an ad in a publication called "Black and White Men Together." Although Potts never visited Gibson at prison, their relationship developed into what Potts described as a lover relationship. Gibson (who had misrepresented himself as black to Potts) eventually asked Potts to send some marijuana into the prison, and set up a smuggling system involving a prison employee. The money orders were to be altered and negotiated to raise some cash to help pay for the drug smuggling.

The 100 money orders were smuggled to Gibson along with marijuana secreted in the backs of pictures or in the bindings of books. Because Gibson owed Potts money for the marijuana delivery service, Potts was to receive his payment from the altered money orders. Other inmate friends of Gibson assisted in the scheme. Everyone involved was to receive a cut of the proceeds when the altered money orders were transmitted to persons outside the

Paul Newman, South Bend, Ind., for defendant-appellant.

Richard A. Cook, Asst. U.S. Atty., James G. Richmond, U.S. Atty., South Bend, Ind., for plaintiff-appellee.

Before WOOD, COFFEY, and RIPPLE, Circuit Judges.

1. Potts was sentenced to five years probation, to run concurrently on all counts. He was also ordered to serve three months in a work release program, to participate in mental health counseling and a course in financial planning, and to render 500 hours of community service in his first two years of probation.

institution and negotiated. Potts was not satisfied with his share. Nevertheless, when Gibson was released from prison Potts carried on the marijuana service with another inmate, Cornell Williams, with whom Potts had developed a relationship.

The district court found that Potts became involved in the smuggling not just for money, but also for "love." Whatever love there may have been, however, was fickle, because Williams became the principal witness against Potts.

At trial about fifty-three of the altered money orders were introduced as exhibits. Each had been altered from $1.00 to either $295 or $291, and all but two of the money orders corresponded with customer receipts retrieved from Potts. At the time Potts was purchasing this remarkably large number of money orders he aroused some suspicion among the postal clerks. One wrote down his license number. Another postal clerk remembered one of the transactions because the defendant was a regular customer. Other witnesses testified about the negotiation of various altered money orders.

A postal inspector testified about an interview he had with Potts in the summer of 1981. Potts told the inspector he had purchased the 100 money orders at Gibson's request. He admitted receiving about $300 from the money orders to buy things for Gibson that were not available in prison. He also admitted he had dropped his correspondence with Gibson and begun writing to Williams in May of 1981. Potts voluntarily turned over to the inspector all the customer receipts and admitted that they were purchased at various locations to avoid suspicion. Potts did not admit during the interview, however, that he knew the money orders would be altered.

Potts testified in his own defense. He admitted that he had smuggled marijuana

and that he was paid for part of it, but he denied that the smuggling was as extensive as Williams testified. He denied knowing the money orders were to be altered and explained he thought they would be used for bartering in prison. Potts also testified about how Gibson came to live with him when he left prison. At that time Gibson intimidated the defendant into providing him with $7,500 (from a children's community theater group of which the defendant was treasurer) for Gibson and friends to use for a counterfeiting scheme. Gibson and friends left with the money. Potts thereafter gave a false report to local police about the withdrawal which resulted in his being found guilty of disorderly conduct.[2]

Out of this sorry story arise three issues: the admissibility of certain hearsay statements, the admissibility of the evidence of prior drug smuggling by Potts, and the admissibility of certain prior written statements by the defendant. None of the issues defendant raises has merit.

## II. DISCUSSION

### A. Hearsay

Potts argues, and it is true, that most of the conspiracy evidence came from Williams's testimony about conversations Williams had with Gibson inside the prison. These conversations, Potts says, were about drug smuggling, but Potts was not charged with that conspiracy. Therefore, he argues, these conversations, not being made "in the course of and in furtherance of the alleged conspiracy" (at least not the conspiracy with which Potts was charged), are not admissible. Williams, but not Gibson, testified at trial. The court admitted the conversations under Federal Rule of Evidence 801(d)(2)(E).[3]

> (d) Statements which are not hearsay. A statement is not hearsay if—
> ....
> (2) Admission by party-opponent. The statement is offered against a party and is ...
> (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

---

**2.** After his conviction for the federal offenses that led to this appeal, Potts, as could be reasonably expected, was fired from his university post. He informed the court he was planning to appeal that firing.

**3.** Federal Rule of Evidence 801(d)(2)(E) provides in pertinent part as follows:

Another tenet of defendant's argument is that the conversations between Gibson and Williams were no more than friendly chats between conspirators, and had nothing to do with furthering the conspiracy charged. They were instead only the "casual admission" type of conversations, between good and trusted friends, and therefore, according to Potts, do not meet the criteria for admissibility as conspiratorial statements.

We have recognized that for conspiratorial hearsay statements to be admissible they must not only be made during the course of the conspiracy, but in furtherance of it. *United States v. Hollins,* 811 F.2d 384 (7th Cir.1987); *United States v. Xheka,* 704 F.2d 974 (7th Cir.), *cert. denied,* 464 U.S. 993, 104 S.Ct. 486, 78 L.Ed.2d 682 (1983). To support his "casual admission" argument the defendant cites *United States v. Tille,* 729 F.2d 615 (9th Cir.), *cert. denied,* 469 U.S. 845, 105 S.Ct. 156, 83 L.Ed.2d 93 (1984); *United States v. Green,* 600 F.2d 154 (8th Cir.1979); and *United States v. Eubanks,* 591 F.2d 513 (9th Cir.1979). We have no quarrel with those cases, only with the way Potts would apply them to the facts here.

In *Tille,* the court held that some of the conversations between coconspirators were merely narrative declarations, not statements in furtherance of the conspiracy. Their admission, however, was found to be harmless error. 729 F.2d at 621–22. In *Green,* in what the court considered a close question, certain admitted hearsay statements were held to be inadmissible because they were mere casual comments not in furtherance of the conspiracy. Because of the overwhelming amount of evidence against the defendants, the court held the admission to be harmless error. 600 F.2d at 157–58. In *Eubanks,* the court held that the conversations between a conspirator and his commonlaw wife, who was not a conspirator at the time, were not in furtherance of the conspiracy, but were only to inform her. 591 F.2d at 520. Reversal resulted.

■ In contrast to the three cases the defendant has cited in which the conversations were not in furtherance of the various conspiracies involved, the conversations here, between two conspirators during the course of the conspiracy, did further the conspiracy. The drug conspiracy and the postal order conspiracy were coextensive. There were discussions about Potts's prison drug service, what was owed him, how he was to be paid, and how Potts could be of further help. Letters from Gibson to Potts also were admitted without objection. These letters kept Potts and the other conspirators advised about the conspiracy's progress with the narcotics and the money orders to pay for the operation of the conspiracy. The inmates needed to keep each conspirator advised so that the prison-employee accomplice would be ready to serve as the drug and money order go-between. These were not mere casual conversations about things in general, but were instead more like committee meetings.

■ As a foundation to the admission of the hearsay under Rule 801(d)(2)(E), the government first had to establish the existence of the conspiracy by a preponderance of the evidence. *Bourjaily v. United States,* —— U.S. ——, 107 S.Ct. 2775, 2778, 97 L.Ed.2d 144 (1987). Although we have previously required the offering party to prove the existence of a conspiracy by a preponderance of the evidence independent of the hearsay, the Supreme Court has held that Federal Rule of Evidence 104(a) does not require a court to consider only independent evidence. Rule 104(a) provides that "[p]reliminary questions concerning ... the admissibility of evidence shall be determined by the court.... In making its determination it is not bound by the rules of evidence except those with respect to privileges." In light of Rule 104(a), the Court held that "a court, in making a preliminary factual determination under Rule 801(d)(2)(E), may examine the hearsay statements sought to be admitted." 107 S.Ct. at 2782.

In this case, the evidence already recounted showed that Potts purchased the 100 one-dollar money orders at various locations and delivered them to the prison coconspirators along with drugs, and that

the money orders were altered in the prison and later negotiated outside. The defendant's own admissions helped put it all in context. This evidence alone would be sufficient to establish the conspiracy; the additional hearsay evidence leaves little doubt that a conspiracy existed and that Potts was a participant. The timing of some of the conspiracy hearsay is not important because, as we have recognized, statements made during the course of and in furtherance of a conspiracy, even in its embryonic stages, are admissible against those who arrive late to join a going concern. *United States v. Dial*, 757 F.2d 163, 170–71 (7th Cir.), *cert. denied*, 474 U.S. 838, 106 S.Ct. 116, 88 L.Ed.2d 95 (1985); *United States v. Harris*, 729 F.2d 441, 448 (7th Cir.1984). The trial judge did not abuse his discretion in admitting Gibson's statements against the defendant.

### B. Evidence of Other Criminal Acts

Defendant objected to and sought by motion *in limine* to prevent the admission of evidence of the prison drug smuggling activity as a violation of Federal Rule of Evidence 404(b).[4]

█ The defendant views the drug evidence as related to a separate, uncharged conspiracy. He recognizes that the government offered the evidence to show motive and plan, but complains that the prejudicial, inflammatory effect of the drug evidence far outweighs its probative value and that it should therefore have been excluded. *United States v. Blackwell*, 694 F.2d 1325, 1332–33 (D.C.Cir.1982); *United States v. Masters*, 622 F.2d 83 (4th Cir. 1980). *Masters* cautions against admitting evidence of other bad acts or crimes without considering whether the probative value of the evidence is substantially outweighed by its unfair prejudice. That rule is universally followed. But the *Masters* court also commented about the admission of similar evidence when it serves to complete the story by proving its context in

time and place. 622 F.2d at 87. The rule favored in *Masters* is that undue prejudice requires exclusion only where there is a genuine risk that the jury's emotions will excite them to the point of irrationality, and that risk is disproportionate to the probative value of the evidence. The evidence in question here would be admissible under *Masters* or *Blackwell*, but with a distinction: the drug activities and the postal money order activities of the defendant, rather than being merely similar, were interrelated. The drug smuggling and postal order alteration scheme involved the same network of co-conspirators whose financial and other interests were all intertwined. The drug and money order activities could not realistically have been separated.

The district judge, moreover, considered the issue and applied the *Shackleford* test for the admissibility of "other acts" evidence under Rule 404(b). *United States v. Shackleford*, 738 F.2d 776, 779 (7th Cir. 1984). In a careful analysis the district judge found that intent was an issue, that the evidence was clear and convincing, that it was directed toward establishing the defendant's intent, plan and motive, that it was similar and close enough in time to be relevant, and, finally, that the evidence's probative value far outweighed any danger of unfair prejudice inherent in its admission. The trial judge properly exercised his discretion. *See also United States v. Byrd*, 771 F.2d 215, 220 (7th Cir.1985).

### C. Written Statements by the Defendant

█ Finally the defendant objects to the admission of certain written statements which the defendant gave to a local police officer after waiving his *Miranda* rights. The defendant related how he had drawn money from the Children's Theatre Fund for Gibson's counterfeiting scheme. The defendant admitted that the police report contained some false information. The ad-

---

**4.** Federal Rule of Evidence 404(b) provides as follows:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

mission into evidence of the false police reports would be questionable except that, for some reason known only to the defendant, the defendant testified fully about the episode during his direct examination. That opened the matter to government rebuttal.

It is also relevant, both to the local police report issue and to the hearsay issue already discussed, that the court gave a cautionary instruction. The jury was plainly informed that they could consider evidence of acts by the defendant not charged in the indictment only on the questions of motive, intent, plan and knowledge, and for those limited purposes only.

The defendant had a fair, error-free trial.

AFFIRMED.